# STATE OF NORTH CAROLINA

**_____DURHAM_____ County**

FILED

2018 MAY 10 A 11 55

DURHAM CO., C.S.C.

BY _____

File No.

In The General Court Of Justice
☐ District ☒ Superior Court Division

**CIVIL SUMMONS**
**ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| Name Of Plaintiff | |
| Address | |
| KATRINA WALLACE | |
| City, State, Zip | |

**VERSUS**

Name Of Defendant(s)
GREYSTAR REAL ESTATE PARTNERS, LLC et al.

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Greystar Management Services, L.P.<br>Registered Agent: CT Corporation System<br>160 Mine Lake Ct., Suite 200<br>Raleigh        NC    27615 | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued MAY 10 2018 | Time 11 55 ☐ AM ☐ PM |
|---|---|---|
| Scott C. Harris<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan St.<br>Raleigh        NC    27603 | Signature | |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_____ DURHAM _____ County

# FILED

2018 MAY 10 A 11: 54

DURHAM CO., C.S.C.

VERSUS BY _____

File No.

In The General Court Of Justice
☐ District  ☒ Superior Court Division

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

*Name Of Plaintiff*

*Address*
KATRINA WALLACE

*City, State, Zip*

*Name Of Defendant(s)*
GREYSTAR REAL ESTATE PARTNERS, LLC et al.

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

## To Each Of The Defendant(s) Named Below:

*Name And Address Of Defendant 1*
Graystar Real Estate Partners, LLC
Registered Agent: CT Corporation System
2 Office Park Court, Suite 103
Columbia                     SC      29223

*Name And Address Of Defendant 2*

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

*Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*
Scott C. Harris
Whitfield Bryson & Mason LLP
900 W. Morgan St.
Raleigh                      NC      27603

*Date Issued*  MAY 1 0 2018

*Time*  11:54  ☐ AM  ☐ PM

*Signature*

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

*Date Of Endorsement*

*Time*  ☐ AM  ☐ PM

*Signature*

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

NOTE TO PARTIES: *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> *Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> *Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

DURHAM County

File No.

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff

FILED

Address
KATRINA WALLACE

2018 MAY 10 A 11: 5

City, State, Zip

DURHAM CO., C.S.C.

VERSUS

BY

Name Of Defendant(s)
GREYSTAR REAL ESTATE PARTNERS, LLC et al.

## CIVIL SUMMONS
## ☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Greystar RS National, Inc.<br>Registered Agent: CT Corporation System<br>160 Mine Lake Ct., Suite 200<br>Raleigh            NC      27615 | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time | |
|---|---|---|---|
| Scott C. Harris<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan St.<br>Raleigh          NC      27603 | MAY 10 2018 | 11:55 ☐ AM ☐ PM | |
| | Signature | | |
| | ☐ Deputy CSC      ☐ Assistant CSC      ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time | |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM ☐ PM | |
| | Signature | | |
| | ☐ Deputy CSC      ☐ Assistant CSC      ☐ Clerk Of Superior Court | | |

NOTE TO PARTIES: *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_____DURHAM_____ County

File No.

In The General Court Of Justice
☐ District ☒ Superior Court Division

FILED

2018 MAY 10 A 11: 55

DURHAM CO. C.S.C.

BY _____

Name Of Plaintiff
Address
KATRINA WALLACE
City, State, Zip

VERSUS

Name Of Defendant(s)
GREYSTAR REAL ESTATE PARTNERS, LLC et al

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Greystar RS SE, LLC<br>Registered Agent: CT Corporation System<br>160 Mine Lake Ct., Suite 200<br>Raleigh                    NC       27615 | |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Scott C. Harris<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan St.<br>Raleigh                    NC       27603 | MAY 1 0 2018 | 1:55 ☐ AM ☒ PM |
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time |
|---|---|---|
| | | ☐ AM   ☐ PM |
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have *MANDATORY ARBITRATION* programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_____DURHAM_____ County **FILED**

File No. _____

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| _Name Of Plaintiff_ | |
| _Address_<br>KATRINA WALLACE | **2018 MAY 10 A 11:55** |
| _City, State, Zip_ | **DURHAM CO., C.S.C.** |

**CIVIL SUMMONS**
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

**VERSUS**  **BY** _____

_Name Of Defendant(s)_
GREYSTAR REAL ESTATE PARTNERS, LLC et al.

_Date Original Summons Issued_

_Date(s) Subsequent Summons(es) Issued_

## To Each Of The Defendant(s) Named Below:

| _Name And Address Of Defendant 1_<br>Greystar GP II, LLC<br>Registered Agent: CT Corporation System<br>150 Fayetteville St.<br>Raleigh                    NC    27601 | _Name And Address Of Defendant 2_ |
|---|---|

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| _Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)_<br>Scott C. Harris<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan St.<br>Raleigh                    NC    27603 | _Date Issued_ **MAY 10 2018** | _Time_ **11:55** ☑ AM ☐ PM |
|---|---|---|
| | _Signature_ | |
| | ☐ _Deputy CSC_    ☐ _Assistant CSC_ | ☐ _Clerk Of Superior Court_ |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | _Date Of Endorsement_ | _Time_ ☐ AM ☐ PM |
|---|---|---|
| | _Signature_ | |
| | ☐ _Deputy CSC_    ☐ _Assistant CSC_ | ☐ _Clerk Of Superior Court_ |

**NOTE TO PARTIES:** _Many counties have_ **MANDATORY ARBITRATION** _programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. _____ CVS _____

2018 MAY 10 A 11: 5*
DURHAM CO., C.S.C.
BY_____

KATRINA WALLACE, )
       )
       Plaintiff, )
       )
       v. )
       )
GREYSTAR REAL ESTATE )
PARTNERS, LLC; GREYSTAR GP II, )
LLC ; GREYSTAR MANAGEMENT )
SERVICES, L.P.; GREYSTAR RS )
NATIONAL, INC.; GREYSTAR RS SE, )
LLC; INNESBROOK APARTMENTS, )
LLC d/b/a SOUTHPOINT GLEN, )
       )
       Defendants. )

**COMPLAINT**

**(Class Action)**

Plaintiff Katrina Wallace (hereafter "Plaintiff" or "Wallace"), on behalf of herself and the proposed Class, files this Complaint against Defendants Greystar Real Estate Partners, LLC, Greystar GP II, LLC, Greystar Management Services, L.P., Greystar RS National, Inc., Greystar RS SE, LLC, and Innesbrook Apartments, LLC d/b/a Southpoint Glen LLC (hereinafter "Defendants" or "Greystar") and states:

## NATURE OF THE ACTION

1.    This is an action brought by Plaintiff Katrina Wallace and others similarly situated due to unlawful and unfair debt collection practices engaged in by Defendants in their attempts to collect upon fees, penalties, and other improper charges, when such costs, fees, charges, and amounts are not owed and expressly prohibited.

2.    This case arises under the Residential Rental Agreements Act, N.C.G.S. § 42-38 *et seq.*, the Uniform Commercial Code - Negotiable Instruments, N.C.G.S. § 25-3-506, the North Carolina Debt Collection Act, N.C.G.S. § 75-50 *et seq.*, the North Carolina common

law of contracts, and the Uniform Declaratory Judgment Act, N.C.G.S. § 1-253, *et seq.*

3.      This is a class action, filed pursuant to Rule 23 of the North Carolina Rules of Civil Procedure on behalf of all tenants of any North Carolina apartment complex in which Greystar provides property management services, including but not limited to tenants of the apartment complex owned by Innesbrook Apartments, LLC d/b/a Southpoint Glen Apartments ("Southpoint Glen Apartments") in Durham, North Carolina who pursuant to Defendants' standardized policies and procedures, have during the past four (4) years or will in the future (a) receive one or more communications from Defendants that violate North Carolina law as further set forth herein, and/or (b) have paid amounts in excess of those allowed by North Carolina law.

## JURISIDICTION AND VENUE

4.      The foregoing allegations are incorporated by reference and realleged herein.

5.      This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. § 42-44, N.C.G.S. § 25-1-305, N.C.G.S. §§ 75-16 and 56, N.C.G.S. § 1-75.4 and N.C.G.S. § 1-253.

6.      Venue is proper under N.C.G.S. § 1-79 in that Defendants maintain a place of business in Durham County, North Carolina, and have regularly engaged in business in Durham County, North Carolina.

## PARTIES

7.      The foregoing allegations are incorporated by reference and realleged herein.

8.      Plaintiff Katrina Wallace is a citizen and resident of Durham County, North Carolina who at all relevant times, leased an apartment from Defendants at Southpoint Glen Apartments with her three-year-old daughter.

2

9.     Plaintiff is a "tenant" subject to the protections of N.C.G.S. § 42-46.

10.    Plaintiff is a "consumer" as defined by N.C.G.S. § 75-50.

11.    Defendant Greystar Real Estate Partners, LLC is, upon information and belief, a limited liability company organized under the laws of the state of South Carolina, maintains a business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

12.    Defendant Greystar GP II, LLC, is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

13.    Defendant Greystar Management Services, L.P., upon information and belief, a limited partnership incorporated under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

14.    Greystar RS National, Inc. is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

15.    Greystar RS SE, LLC is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

3

16.    Innesbrook Apartments, LLC d/b/a Southpoint Glen Apartments is, upon information and belief, a limited liability company organized under the laws of the state of North Carolina, and has regularly engaged in business in Durham County, North Carolina.

17.    Upon information and belief, Defendant Greystar Real Estate Partners, LLC, employs the persons and other entities to operate the properties in North Carolina, including the Southpoint Glen Apartments.

18.    Upon information and belief, Greystar Real Estate Partners, LLC, is the only property management company engaged in the work and business of the Southpoint Glen Apartments and other North Carolina properties.

19.    Upon information and belief, Defendants are so closely related in ownership and management, and that each works closely in concert with the other, such that each has become the *alter ego* of the other.

20.    With respect to all actions and decisions to this action, Defendants have operated as a single entity.

21.    Defendants are each "landlords" as defined by N.C.G.S. §42-40(3).

22.    At all times relevant to this action, Defendants, in the ordinary course of business as the lessors of residential real property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. §75-1.1.

23.    Defendants are each "debt collectors" as defined by N.C.G.S. § 75-50.

## GENERAL BACKGROUND

24.    The foregoing allegations are incorporated by reference and realleged herein.

25.    Upon information and belief, at all times relevant to the allegations contained

4

herein, Defendants entered into lease agreements with all North Carolina tenants that state "[i]n the event we file a summary ejectment lawsuit against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs..." See attached **Exhibit 1** (emphasis in original). The lease agreements immediately identify and describe three fees: a Complaint Filing Fee, a Court Appearance Fee, and a Second Trial Fee.

26.    The Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee are the same fees described in N.C.G.S. § 42-46 (e) through (g).

27.    Upon information and belief, at all times relevant to the allegations contained herein, Defendants have maintained a uniform, statewide policy of requiring any North Carolina tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 after the 16th day of any given month to pay filing fees ("Filing Fees"), sheriff service fees ("Service Fees"), and attorneys' fees ("Attorneys' Fees") (collectively the Filing Fees, Service Fees, and Attorneys' Fees are referred to as the "Eviction Fees") (herein described as the ("Collection Policy").

28.    Eviction Fees are additional fees separate and apart from the ones expressly authorized by N.C.G.S. § 42-46.

29.    Eviction Fees are fees set by the North Carolina Legislature for filing a complaint in summary ejectment and for service of process by a sheriff.

30.    Upon information and belief, Defendants entered into a legal services agreement with a law firm that charges a flat fee per eviction. Upon information and belief, this legal services agreement limits the scope of the law firm's representation to only seeking possession of the apartment premises on behalf of Defendants and not any money owed.

31.     Upon information and belief, throughout the Relevant Time Period, the Filing Fees were $96.00 and the Service Fees were $30.00. *See* **Exhibit 2** and **Exhibit 3**.

32.     When a tenant fails to make a full and complete rental payment, or maintains a rental balance on their account ledger in excess of $0.00 after the 12th day of any given month, Defendants cause written letters or emails to be delivered to the tenant stating that the tenant "will also be charged for court costs" if he or she fails to make a complete rental payment (hereinafter "Initial Collection Letter").

33.     An exemplar of the Initial Collection Letter is attached as **Exhibit 4**.

34.     The "court costs" referred to in the Initial Collection Letter is the same as Eviction Fees described herein.

35.     Upon information and belief, pursuant to the Collection Policy, tenants owe, and are required to pay Eviction Fees even if: (a) the complaint in summary ejectment had not yet even been filed; (b) the complaint in summary ejectment is dismissed; or (c) a North Carolina Magistrate Judge orders the Eviction Fees to be assessed against Defendants.

36.     Upon information and belief, each and every tenant of a property owned or managed by Defendants, or either of them, is subject to the Collection Policy.

37.     Upon information and belief, the Collection Policy is uniformly applied to each and every tenant that resides at any of the apartments owned or managed by Defendants.

38.     Upon information and belief, the Collection Policy is mandatory throughout Defendants' properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

39.     Upon information and belief, pursuant to the Collection Policy, when a tenant fails to make a full and complete rental payment, or maintains a balance on their account ledger

6

in excess of $0.00 on or around the 16th day of any given month, Defendants file legal action to evict the tenant.

40.    Immediately before filing legal action to evict a tenant, or shortly thereafter, Defendants post to the tenant's account ledger all Eviction Fees as immediately due and owing.

41.    All the Eviction Fees are posted to a tenant's account ledger are in addition to, and separate from, the late fees and the fees specifically authorized by N.C.G.S. § 42-46, including the "Complaint-Filing Fee."

42.    Upon information and belief, pursuant to the Collection Policy, Eviction Fees are entered into a tenant's account ledger prior to a North Carolina court awarding such amounts to Defendants, and sometimes before a complaint in summary ejectment is even filed.

43.    At the time the Eviction Fees are entered into the account ledger as immediately due and owing, there is no guarantee that Defendants will ever be awarded such fees by a North Carolina court.

44.    Upon information and belief, entering the Eviction Fees on a tenant's account ledger as immediately due and owing is mandatory throughout Defendants' North Carolina properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

45.    Upon information and belief, after causing the Eviction to be assessed against the tenant's account ledger, and with no guarantee such amounts will ever be awarded by a North Carolina court, Defendants immediately begin attempting to collect upon the balance contained on the account ledger pursuant to its Collection Policy.

46.    Upon information and belief, after the Eviction Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will review and

7

reconsider whether such Eviction Fees were improperly assessed.

47.     Upon information and belief, even if a complaint in summary ejectment filed against a tenant is dismissed or not awarded, there are no occasions in which Defendants will review and reconsider whether such Eviction Fees were improperly assessed.

48.     Upon information and belief, after the Eviction Fees are entered onto an tenant's account ledger, there are no occasions in which Defendants will remove such Eviction Fees from an individual tenant's account ledger.

### WALLACE'S FACTS

49.     Wallace entered into a lease contract with Defendants for an apartment in Southpoint Glen Apartments, 5901 Tattersail Drive, Apt. 12, Durham, North Carolina, 27713 ("Apartment 12") for a period from April 23, 2017 through June 21, 2018 (the "Lease"). The Lease is attached hereto as **Exhibit 1**.

50.     The Lease stated that "[i]n the event we file a summary ejectment lawsuit against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs)..." and immediately identified and described the Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee.

51.     Wallace lived in Apartment 12 with her three-year-old daughter.

52.     Pursuant to the Lease, Wallace's total monthly rent for Apartment 12 is $871.00.

53.     After experiencing painful migraines for a significant period of time, Wallace visited a neurologist on October 3, 2017 and underwent an MRI. On October 5, 2017, her neurologist diagnosed her with encephalocele and recommended that she undertake immediate brain surgery to that required immediate surgery to repair openings in her skull that were leaking brain fluid.

8

54.     On November 13, 2017, Wallace underwent brain surgery to repair her skull. On November 20, 2017, Wallace was required to undergo a second brain surgery. As a result of the two brain surgeries, she was hospitalized for a total of nine (9) days.

55.     As a result of her condition, Wallace was unable to return to work at BioMerieux and has since been placed on disability.

56.     Although Wallace was not able to work from October 27, 2017 to present, she had savings that, along with her final paycheck and a small insurance payment, was sufficient to pay rent in November, December, and January 2018.

57.     Unfortunately, in February of 2018, Wallace exhausted her finances and determined that she was going to be unable to meet the entirety of her rental obligations.

58.     On February 6, 2018, Wallace was late making a rental payment and was charged $43.55 pursuant to N.C.G.S. § 42-46(a). See attached **Exhibit 5**.

59.     On or about February 12, 2018, Wallace received the Initial Collection Letter. An exemplar of the letter that she received, but from a different date, is attached as **Exhibit 4**.

60.     On February 12, 2018, Wallace went to her bank, State Employees' Credit Union, and, upon information and belief, utilized nearly every dollar to her name and requested a money order for approximately $358.86 to be addressed to "SouthPoint Glen." She also requested a print-out of her bank accounts showing approximately a $25 balance, the minimum amount her bank required her to maintain in her account.

61.     Wallace then immediately went to the North Carolina Division of Social Services ("Social Services") to request assistance with her rent. That same day, after reviewing her banking and leasing information, Social Services confirmed that they would provide a total payment of $600 ($400 from the "Temporary Assistance to Needy Families Program" and $200

9

from the "County Emergency Assistance-Preventative Program") directly to Greystar and provided Wallace with written confirmation to provide to the property manager. The written confirmation is attached hereto as **Exhibit 6 and Exhibit 7**.

62.    Wallace went to the front office that same afternoon and provided the partial money order and the written confirmations from Social Services to Brook Griffin. Ms. Griffin told her that they could not accept the voucher and would only accept "certified check or money order." Wallace told her that the check was coming in the mail directly to Greystar but was told that it "did not matter."

63.    On February 13, 2018, Wallace, along with all other Southpoint Glen residents who were late, received an email that stated: "Please note that all unpaid accounts have now been filed on for possession. To dismiss the eviction filing, please include the filing fee. ($201 for one lease holder; $231 for two lease holders; $261 for three lease holders.)" See attached **Exhibit 8**.

64.    Upon information and belief, on February 13, 2018, Southpoint Glen requested its eviction lawyers to begin the eviction process on Wallace and all other Southpoint Glen residents who were late.

65.    In a February 16, 2018 email to Wallace, Defendants claimed that "[t]he cost of eviction is the responsibility of the tenant per NC tenant law 42-33." See attached **Exhibit 9**. Upon information and belief, Defendants were referring to N.C.G.S. § 42-33.

66.    On or about February 16, 2018, before the complaint in summary ejectment against Wallace was actually filed, the Eviction Fees, described on the ledger as "Legal Fees," were placed on her account ledger in the amount of $201.00. See attached **Exhibit 5**.

67.    The "Legal Fees" referred to on Wallace's ledger are the same fees described as

10

"filing fees" in the Initial Collection Letter, and are the same as the Eviction Fees described herein.

68.    At the time the Eviction Fees were placed on Wallace's ledger, no hearing had been held and no attorney had appeared in Court to evict Wallace and/or seek the award of Eviction Fees.

69.    At the time the Eviction Fees were placed on Wallace's ledger, no attorney had been hired by Defendants to collect any debt.

70.    On or about February 20, 2018, Defendants filed the Complaint in Summary Ejectment in the Small Claims Division of Durham County General Court of Justice, alleging Wallace owed $871.00 in past due rent. See attached **Exhibit 10**. In its February 20 Summary Ejectment Complaint, Defendants wrote that they "hereby omit[] any claim for rents or damages and is seeking possession of the premises only. [Defendants] reserve[] the right to seek any monetary damages in a separate civil action." See attached **Exhibit 10**.

71.    On February 21, 2017, Wallace was forced to borrow $201 from her mother to pay the Eviction Fees to avoid being evicted with her three-year-old daughter.

## COMMON CLASS ALLEGATIONS

72.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

73.    Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of the two classes:

**The Initial Collection Letter Class (represented by Plaintiff):**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint and during its pendency (b) resided in one of the apartments owned or managed by Defendants' in North

11

Carolina (c) were sent the Initial Collection Letter that (d) threatened to charge Eviction Fees in order to dismiss the eviction action.

**The Fee Class (represented by Plaintiff):**

All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint and during its pendency (b) resided in one of the apartments owned or managed by Defendants' in North Carolina (c) were charged and (d) actually paid Eviction Fees prior to a North Carolina court awarding such Eviction Fees to Defendants.

74. Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants has a controlling interest in Defendants and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the classes.

75. *Commonality*: All questions concerning Defendants' Collection Policy and Defendants' sending the Initial Collection Letter are common. Whether Defendants may lawfully charge Eviction Fees separate from and in addition to what is authorized by N.C.G.S. § 42-46 is a question that is common for all members of the classes. Each and every member of the proposed Class is subject to Defendants' policies and procedures. Further, the answer to this question will drive other answers in the litigation, including whether the Initial Collection Letter is lawful and whether any portion of Defendants' lease is void and unenforceable.

76. *Predominance:* Common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice and policy of charging tenants Eviction Fees after the 16th day of the month as described herein. These questions include, but are not limited to:

12

a.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violates N.C.G.S. § 42-46 in that Defendants represent that a specific amount of debt may be increased by Eviction Fees prior to the award of such amounts by a North Carolina court;

b.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees is illegal under N.C.G.S. § 42-46;

c.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees violates N.C.G.S. § 75-1.1 *et seq.*;

d.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violates N.C.G.S. § 75-1.1 *et seq.* in that Defendants refuse to refund Eviction Fees after a Court taxes the cost of the action against Defendants.

e.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Attorneys' Fees are in violation of N.C.G.S. §§ 6-21.2 and 42-46 in that Defendants' attorneys are not collecting upon any debt;

f.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees constitutes a violation of N.C.G.S. § 75-1.1 *et seq.* in that Defendants unlawfully claim Attorneys' Fees are due and owing despite the absence of any statutory authority granting such fees.

g.      Whether any portion of Defendants' lease is void and unenforceable because it contains a fee for filing a complaint for summary ejectment and/or money owed other than the fees expressly authorized by N.C.G.S. § 42-46 (e) through (g).

13

77.    *Numerosity*: The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are readily identifiable through the business records maintained by Defendants, and may be notified of the pendency of this action by published and/or mailed notice. Members of the classes include hundreds of present and former tenants of Defendants' Apartments who have either already been charged or will be charged with Eviction Fees in the future unless the illegal policy, practice and procedure is enjoined.

78.    *Typicality*: The claims of the Plaintiff are typical of the claims of the proposed classes and all are based on the same facts and legal theories, as all such claims arise out of Defendants' conduct in that Defendants have a specific policy of attempting to unlawfully collect debt from each member of the proposed classes Eviction Fees following the expiration of the 16th day of the month.

79.    *Adequate Representation*: The Plaintiff is an adequate representative of the class in that the Plaintiff does not have antagonistic or conflicting claims with other members of the class. Plaintiff has also retained counsel experienced in the prosecution of complex class actions and consumer litigation. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

80.    *Superiority*: A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs anticipate no difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

14

81.     Further, Defendants have acted and refused to act on grounds generally applicable to the proposed class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION:
Violation of the North Carolina Residential Rental Agreements Act
N.C.G.S. § 42-46
(on behalf of all classes)

82.     All paragraphs of this complaint are incorporated herein as if fully restated.

83.     Defendants' conduct as described above is subject to N.C.G.S. § 42-46 of the Residential Rental Agreements Act.

84.     N.C.G.S. § 42-46(e)-(h) specifically limits the amounts that can be charged to a tenant for eviction related fees. Any amounts charged in excess of this limitation is against North Carolina's public policy and therefore void and unenforceable.

85.     The Eviction Fees charged by Defendants to Plaintiff and members of the Class were separate from and in excess of the amount allowed under N.C.G.S. § 42-46 and constitute a violation of North Carolina law.

86.     The amount of Eviction Fees charged by Defendants to Plaintiff and other members of the Class are in excess of the amounts allowed under N.C.G.S. § 42-46.

87.     As a proximate result of Defendants' conduct, Plaintiff and all members of the Class were damaged and are entitled to recover all amounts of Eviction Fees paid to Defendants in violation of N.C.G.S. § 42-46. This amount is in excess of $25,000.

## SECOND CAUSE OF ACTION
Violation of North Carolina Debt Collection Act
N.C.G.S. § 75-50, *et seq.*
(on behalf of all classes)

88.     All paragraphs of this complaint are incorporated herein as if fully restated.

15

89.     Plaintiff and each member of the Class is a "consumer," as that term is defined by N.C.G.S. § 75-50.

90.     The amount purportedly owed to Defendants by Plaintiff and each member of the Proposed Class is a "debt," as that term is defined by N.C.G.S. § 75-50.

91.     At all times relevant to this action, Defendants, in the ordinary course of business as lessors of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1.

92.     Defendants, in seeking to recover past due rent, fees, and other charges, are "debt collectors" as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

93.     Defendants' actions described above constitute the collection of a "debt" under N.C.G.S. § 75-50.

94.     Defendants are subject to the requirements of N.C.G.S. § 75-50 *et seq.*, that prohibits certain activities by debt collectors.

95.     Defendants violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law.

96.     Defendants violated N.C.G.S. § 75-51(8) by threatening to take and taking actions not permitted by law, including, *inter alia*, threatening to assess and collect Eviction Fees without a legal justification.

97.     Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, threatening to assess and collect Eviction Fees without a legal justification.

16

98.   Defendants' communications to Plaintiff and members of the Class constituted "communications attempting to collect a debt" subject to the disclosure requirement of N.C.G.S. § 75-54(2).

99.   Defendants' violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means.

100.   A violation of N.C.G.S § 42-46 constitutes an unfair debt collection attempt under N.C.G.S.§ 75-50 *et seq*.

101.   Defendants collected or attempted to collect from Plaintiff and members of the class a charge, fee or expense incidental to the principal debt of the monthly rent owed, that was legally prohibited under N.C.G.S. 42-46, in violation of N.C.G.S. § 75-51(8), N.C.G.S. § 75-54, and N.C.G.S. §75-55 (2).

102.   Defendants actions in violation of North Carolina's Unfair Debt Collection Act were willful.

103.   Plaintiff and each member of the Class were injured by Defendants' actions and are entitled to damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 per violation resulting from each of Defendants' unfair debt collection practices pursuant to N.C.G.S. §75-56.

104.   Plaintiff and each member of the Class were injured and sustained damages by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages for each violation in the maximum amount allowed by law, as well as reasonable attorneys' fees for an amount in excess of $25,000.00.

**THIRD CAUSE OF ACTION**
Violation of the North Carolina Unfair and Deceptive Trade Practices Act
N.C.G.S. § 75-1.1, *et seq*.
(on behalf of all classes)

17

105. All paragraphs of this complaint are incorporated herein as if fully restated.

106. At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

107. The conduct of Defendants as set forth herein is against the established public policy of the State of North Carolina; is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

108. Defendants' violations of the UDTPA include, but are not limited to, (a) misrepresenting the character, amount, or legal status of the obligation alleged to be owed by Plaintiff and each member of the class; (b) employing a system, policies, and procedures for the collection of debt which is unfair, deceptive, and misleading, and not permitted by both the public policy of North Carolina and the express statutory provisions of N.C.G.S. § 42-46; (c) utilizing false representations and deceptive measures to collect or attempt to collect Eviction Fees which are unlawful; (d) undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiff; and (e) employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods with the explicit knowledge that such conduct was in violation of applicable North Carolina law.

109. The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiff and each member of the Class.

110. Plaintiff and members of the Class suffered actual injury as a result of Defendants' unfair actions. Such injury consists of, but is not limited to emotional distress

18

damages and money damages resulting from Defendants' demanding and obtaining fees and costs in excess of amounts allowed pursuant to North Carolina law from Plaintiff and each member of the Class.

111. Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

112. Plaintiff and each member of the Class have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

## FOURTH CAUSE OF ACTION
Petition for Injunction N.C.G.S. § 1-485, *et seq.*
(on behalf of all classes)

113. All paragraphs of this complaint are incorporated herein as if fully restated.

114. Wallace and each member of the Classes seek a temporary and permanent injunction enjoining Defendants from attempting to unlawfully collect upon debt as set forth herein pursuant to N.C.G.S. § 1-485, *et. seq.*

## FIFTH CAUSE OF ACTION
Petition for Declaratory Judgment N.C.G.S. § 1-253, *et seq.*
(on behalf of all classes)

115. All paragraphs of this complaint are incorporated herein as if fully restated.

116. Wallace and the members of the Classes file this Petition for a Declaratory Judgment under N.C.G.S. Chapter 1, Article 25, and the Court has jurisdiction of this matter under such statute.

117. Wallace and the members of the Classes have an actual controversy with Defendants regarding the validity and enforceability of a portion of the Lease.

118. The Lease states that"[i]n the event we file a summary ejectment lawsuit against

19

you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs..." and immediately identified and described the three fees identified in N.C.G.S. § 42-46 (e) through (g): Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee. Upon information and belief, every lease during the Relevant Time Period, including Wallace's Lease, contains this same provision.

119.     However, N.C.G.S. § 42-46(h)(3) states that "[i]t is contrary to public policy for a landlord to put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law."

120.     The Eviction Fees, described as "any applicable court costs" in the Lease, constitute a "fee for filing a complaint for summary ejectment" and is separate from and in addition to "the ones expressly authorized by subsections (e) through (g)."

121.     Under N.C.G.S. § 42-46(h)(4), "[a]ny provision of a residential rental agreement contrary to the provisions of this section is against the public policy of this State and therefore void and unenforceable." Therefore, because Defendants' lease contains a provision that is void and unenforceable, Plaintiff and the members of the classes seek an order declaring the Defendants' North Carolina leases to be void and unenforceable insofar as such leases provide for a fee other than the ones expressly authorized by N.C.G.S. § 42-46 (e) through (g).

122.     Wallace and the members of the Classes have an actual controversy with Defendants resulting from Defendants' erroneous interpretation of the applicable law.     .

123.     In a February 16, 2018 email to Wallace, Defendants claimed that "[t]he cost of eviction is the responsibility of the tenant per NC tenant law 42-33." See attached **Exhibit 9**. Upon information and belief, Defendants were referring to N.C.G.S. § 42-33.

20

Case 1:18-cv-00501-LCB-LPA   Document 1-1   Filed 06/13/18   Page 30 of 45

124.    It is established law in North Carolina that N.G.S.S. § 42-33 is "remedial in nature and will apply only where the parties' lease does not cover the issue of forfeiture of the lease term upon nonpayment of rent. Where the contracting parties have considered the issue, negotiated a response, and memorialized their response within the lease, the trial court appropriately should decline to apply these statutory provisions." *Charlotte Office Tower Associates v. Carolina SNS Corp.*, 89 N.C. App. 697, 701 (N.C. App. 1998).

125.    Defendants entered into written leases that cover the issue of forfeiture of the lease term upon nonpayment of rent with Plaintiff and members of the classes.

126.    Therefore, because the parties have considered the issue, negotiated a response, and memorialized the response within a written lease, Plaintiff and the members of the classes seek an order declaring that N.C.G.S. § 42-33 is not applicable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff; and members of the proposed Classes respectfully request that this Court:

1.    Assume jurisdiction over this action;

2.    Certify the Classes and appointing Plaintiff and her counsel to represent the classes;

3.    Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiff and each member of the Proposed Class pursuant to N.C.G.S. § 75-54, or in the alternative N.C.G.S. § 75-1.1;

4.    Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiff and each member of the Proposed Class pursuant to N.C.G.S. § 75-55, or in the alternative N.C.G.S. § 75-1.1;

5.    Issue a declaratory judgment that Defendants' Standard Lease and any

21

substantially similar residential lease agreement used by Defendants is contrary to N.C.G.S. § 42-46 and therefore void and unenforceable as against public policy;

6.     Issue a declaratory judgment that N.C.G.S. § 42-33 is inapplicable in every instance in which Defendants entered into a written lease agreement that addresses forfeiture of the lease term upon the tenant's nonpayment of rent with Plaintiffs and the members of the classes;

7.     Enjoin Defendants from collecting or attempting to collect any payment of Eviction Fees from members of the Proposed Class unless and until a North Carolina court taxes the costs of such action against a tenant;

8.     Enjoin Defendants from ever collecting or attempting to collect any payment of Attorneys' Fees from members of the Proposed Class when their attorneys' are hired to pursue an eviction;

9.     Award Plaintiff and each member of the Proposed Class compensatory damages in an amount to be determined at trial;

10.    Award Plaintiff and each member of the Proposed Class punitive damages amount to be determined at trial;

11.    Award Plaintiff and each class member a statutory penalty in the amount of no more than $4,000 for each violation of N.C.G.S. § 75-50 *et seq.*;

12.    Award Plaintiff and each class member damages calculated pursuant to N.C.G.S. § 75-8 for each week that Defendants' illegal conduct occurred;

13.    Award Plaintiff all statutory and actual damages to which she is entitled separate and apart from the Proposed Class in an amount in excess of $25,000.00;

14.    Treble all damages resulting from a violation of N.C.G.S. § 42-46 in accordance

22

with N.C.G.S. § 75-1.1;

15. Award attorneys' fees to Plaintiff and members of the Proposed Class pursuant to N.C.G.S. § 75-16.1;

16. Tax the costs of this action to Defendants, or any of them;

17. Allow a trial by jury on all issues so triable; and

18. Grant Plaintiff and the members of the Proposed Class such other and further relief as the Court deems just and proper.

Respectfully submitted on this _10th_ day of May, 2018.

WHITFIELD BRYSON & MASON LLP

Scott C. Harris
N.C. Bar No.: 35328
Patrick M. Wallace
N.C Bar No.: 48138
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@wbmllp.com
pat@wbmllp.com

MAGINNIS LAW, PLLC
Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com

*Attorneys for Plaintiff Katrina Wallace and the proposed Class*

23



# Apartment Lease Contract

Date of Lease Contract: __April 21, 2017__
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

**1. PARTIES.** This Lease Contract (sometimes referred to as the "Lease") is between you, the resident(s) (list all people signing the Lease Contract): __Katrina Wallace__

__Southpoint Glen Apartments, LLC__ and us, the owner:

(name of apartment community or title holder). You've agreed to rent Apartment No. __12__, at __5901 Tattersall Drive__ (street address) in __Durham__ North Carolina, __27713__ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract):

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than 2 consecutive days without our prior written consent, and no more than twice that many days in any one month.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __22nd__ day of __April__ __2017__, and ends at midnight the __21st__ day of __June__ __2018__. This Lease Contract will automatically renew month-to-month unless either party gives at least __60__ days written notice of termination or intent to move-out as required by paragraph 36.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $__1021.00__, due on or before the date this Lease Contract is signed, to be administered in accordance with the North Carolina Tenant Security Deposit Act, N.C.G.S. § 42-50 et seq.

In holding your security deposit, we will (check one):

☒ Deposit the security deposit in a trust account with (name of bank or savings institution) __Bank of America__

located at (address) ____

or

☐ Furnish a bond from (name of bonding company) ____ located at (address) ____

The security deposit may, in our discretion, be deposited in an interest-bearing account with the bank or savings institution named above. We may retain any interest earned upon the security deposit and may withdraw such interest, if any, from such account as it accrues as often as is permitted by the terms of the account.

Your security deposit will be held and, upon termination of your tenancy, be applied in the manner and for the purposes set forth in paragraphs 40 and 41 of this Lease Contract.

**5. KEYS AND FURNITURE.** You will be provided __2__ apartment key(s), __2__ mailbox key(s), and __other access devices for __Mailbox 298__. Your apartment will be (check one): ☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $__871.00__ per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at your online payment site, or
☐ at ____

Prorated rent of $__261.30__ is due for the remainder of (check one):
☐ 1st month or ☐ 2nd month, on ____.

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless expressly authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the __5__ day of the month, you'll pay a late charge of 5% of the rental payment or $15.00, whichever is greater. You'll also pay a charge of $__25.00__ as provided by law for each returned check or rejected electronic payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked and if permitted by law:
☐ water ☐ gas ☐ electricity ☐ master antenna.
☐ wastewater ☐ trash ☐ cable TV ☐ other ____.

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are (check one) ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be specifically allocated for the purchase of the owner's structural fire insurance, though the owner may use a portion of gross rental proceeds obtained from all rental units in the community to purchase such structural fire insurance, and in such an event, that you are in no way a co-insured under any such policy.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them.

**What You Are Now Requesting.** You now request the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request.

☒ keyed deadbolt lock ☒ doorviewer
☐ keyless deadbolt ☐ sliding door pinlock
☒ sliding door bar

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

EXHIBIT
1

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

_____
_____
_____
_____
_____

See any additional special provisions.

**11. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens unless caused by other than your negligence; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**12. (A) EVICTION OR SUMMARY EJECTMENT AND PROPERTY LEFT IN THE APARTMENT.**

In the event you violate any terms or conditions of this Lease Contract or fail to perform any promise, duty or obligation you have agreed to or imposed upon you by law, then we, in addition to all other rights and remedies provided by law, may, at our option and with or without notice to you, either (1) terminate this Lease Contract or (2) terminate your right to possession of the premises without terminating this Lease Contract.

Regardless of whether we terminate this Lease Contract or only terminate your right of possession without terminating this Lease Contract, we shall be immediately entitled to possession of the premises and you shall peacefully surrender possession of the premises to us immediately upon our demand. In the event that you fail to surrender possession, we shall re-enter and re-take possession through a summary ejectment proceeding or expedited eviction proceeding as provided by North Carolina law. In the event that we terminate this Lease Contract, all of our duties under this agreement shall terminate and we shall be entitled to collect from you all accrued and unpaid rents, realized concessions, and damages arising under this Lease Contract.

If we bring a suit against you for summary ejectment, the County sheriff may remove your personal property from the apartment within 7 days from the time the sheriff receives the Writ of Possession. You must retake possession of your property if it is removed by the sheriff. If you do not do so, the sheriff may arrange for the storage of your property, and you will be liable for the costs of the proceedings and the storage of your property.

If the sheriff does not store your personal property removed from the apartment, we may take possession of it and move it for storage purposes. In the event of an execution of a Writ of Possession against you, you agree that this sentence hereby constitutes our offer to release your personal property to you during our regular business hours for the seven calendar-day period following the execution of a Writ of Possession. Seven days after being placed in lawful possession of your personal property by execution of the Writ of Possession, we may throw away, dispose of, or sell your property. If you request that we release your property to you during the seven day period, we must do so during our regular business hours. If we elect to sell your property, we must give you at least seven days notice prior to the sale, and we must release your property to you if you so request before the sale. If you do not request the release of your property within seven days, all costs of summary ejectment, execution and storage proceedings shall be charged to you as court costs and shall constitute a lien against the stored property.

In the event we terminate your right of possession without terminating this Lease Contract, you shall remain liable for the full performance of all the covenants, and we shall use reasonable efforts to re-rent the premises on your behalf and you shall remain liable for any resulting costs, deficiencies or damages. Any such rentals reserved from re-renting shall be applied first to the cost of re-renting the premises and then to the rentals due under this Lease Contract. Re-entry shall not bar the right of

recovery of rent or damages for breach of covenants, nor shall the partial receipt of rent after conditions broken be deemed a waiver of forfeiture, as provided by N.C.G.S. In order to entitle us to re-enter and/or terminate this Lease Contract for default, it shall not be deemed necessary to give notice of rent being due and unpaid or of other conditions broken or to make demands for rent, the execution of this Lease signed by you and us being sufficient notice of all terms of this Lease Contract including of the rent being due and demand for the same. We shall have all rights granted pursuant to N.C.G.S. §42-25.9 and §42-25.6.

**(B) ABANDONED PROPERTY**

If you abandon personal property with a value of $750 or less from apartment or fail to remove such property at the time of execution of a Writ of Possession, we may, as an alternative to the procedures described above, deliver the property to a non-profit organization regularly providing free or inexpensive clothing or household furnishings to people in need, provided that such organization agrees to store the property separately for a thirty-day period, and to release it to you without charge during this thirty-day period. We will deem personal property to be abandoned if we find evidence clearly showing the apartment has been voluntarily vacated after the rental period has expired and we have no notice of a disability that caused the vacancy.

If the total value of the property left in the apartment at the time of execution of a Writ of Possession is less than $500, we may deem the property abandoned after five days and may throw away or dispose of the property.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. This paragraph does not apply to termination of this Lease Contract 14 or more days before occupancy by Military Personnel under Paragraph 22.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the Initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 17. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 36.

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; or (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**16. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**17. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**18. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including in child care services) in your apartment or in the

apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

0421201711154020NN12051652

**19. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community.

**20. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

**21. RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 13, 22, or 24, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**22. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2) you are either (i) given change-of-station orders to permanently depart the local area, (ii) deployed with a military unit for 90 days or more, or (iii) relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after our receipt of the notice. You must furnish us a copy of your permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. If you or any co-resident are a dependent of a servicemember covered by the U.S. Servicemembers Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service. A co-resident who is not your spouse or dependent cannot terminate under this military clause. If you terminate the Lease Contract 14 or more days before occupancy, no damages or penalties of any kind shall be due.

**23. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 6.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries, if applicable, when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must periodically inspect the smoke detectors and carbon monoxide detectors to ensure their operability and immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and carbon monoxide detectors. If you disable or damage the smoke detector and carbon monoxide detectors, or fail to replace a dead battery or report malfunctions to us, you may be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. Unless we instruct otherwise, you must—for 24 hours a day during freezing weather—(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

Crime or Emergency. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**24. CONDITION OF THE PREMISES AND ALTERATIONS.** You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephones and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**25. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or imminently dangerous conditions as specifically defined by law). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are rarely emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**26. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. This additional deposit is considered a part of the general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. You shall remove any pet previously permitted under this Lease Contract and the Animal Addendum within ____48____ hours of written notification from us that the pet, in our sole judgment, creates a nuisance or disturbance or is, in our opinion, undesirable. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules.

**27. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times

0421201711540 3NN12051652

for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and
(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; stopping excessive noise; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated,

etc.); allowing entry by a law officer with search or arrest warrant or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

28. **MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute matters from all residents. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 41.

29. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(1) a reletting charge *will not* be due;
(2) a reasonable administrative (paperwork) and/or transfer fee *will be* due, and a rekeying fee *will be* due if rekeying is requested or required; and
(3) the departing and remaining residents *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

Procedures for Replacement. If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an *entirely new* Lease Contract. Unless we agree otherwise in writing, your security deposit *will* automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right of occupancy or security-deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

30. **RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) comply with the applicable building and housing codes;
(2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;
(3) keep all common areas of the premises in safe condition;
(4) maintain in good and safe working order and promptly repair all facilities and appliances supplied or required to be supplied by us; and
(5) provide operable smoke detectors and replace or repair the smoke detectors within 15 days of receipt of your written notification to us.

31. **DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any term of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct in Paragraph 19; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

Eviction. If you default, we may re-enter and re-take possession of the premises as provided in Paragraph 12 and may immediately institute proceedings for summary ejectment as provided by law without notice or demand. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After filing a summary ejectment suit, we may still accept a partial payment of rent or a partial housing subsidy payment; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting a partial payment of rent or a partial housing subsidy payment at any time doesn't waive your default of this Lease Contract nor right to damages; past or future rent or other sums; or to file an eviction or to continue with filed eviction proceedings; nor does our exercise of any of our rights in this Paragraph violate Chapter 75 of the N.C. General Statutes.

Holdover. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for actual damages arising out of full term of the previously signed Lease Contract of a new resident who

can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

Other Remedies. If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless governmental regulations on submetering or utility proration provide otherwise, or unless otherwise prohibited by law. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in addition to other sums due. Upon your default, we have all other legal remedies, including lease termination and summary ejectment under state statute. We may recover from you attorney's fees and all litigation costs to the extent permitted by law. In the event we file a summary ejectment lawsuit against you, we may also recover from you the highest one of the following fees (which shall be in addition to late fees, attorney's fees, and applicable court costs):

(1) Complaint Filing Fee. If you are in default of this Lease Contract and if we file and serve a summary ejectment complaint or a complaint for money owed against you, and if we elect to dismiss the complaint after you cure the default, you shall owe Us a Complaint Filing Fee equal to $15.00 or five percent (5%) of the monthly rent, whichever is higher. If the rent is subsidized by a government entity, the Complaint Filing Fee will be $15.00 or 5% of your share of the monthly rent, whichever is higher.

(2) Court Appearance Fee. In the event that (i) we file, serve, and prosecute successfully a summary ejectment complaint or complaint for money owed against you and (ii) a judgment is entered against you, you shall owe us—in lieu of the Complaint Filing Fee—a Court Appearance Fee equal to ten percent (10%) of the monthly rent. If the rent is subsidized by a government entity, the Court Appearance Fee will be 10% of your share of the monthly rent.

(3) Second Trial Fee. In the event that (i) you appeal a judgment of a magistrate and (ii) we prove that you are in default of the lease at the new trial and (iii) we obtain a judgment against you at the new trial, you shall owe us—in lieu of the Complaint Filing Fee and Court Appearance Fee—a Second Trial Fee equal to twelve percent (12%) of the monthly rent. If the monthly rent is subsidized by a government entity, the Second Trial Fee will be 12% of your share of monthly rent.

Mitigation of Damages. If you move out early, you'll be subject to all remedies under North Carolina law. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

32. **MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representatives will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person

giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is

04212017115404E8112051652

Katrina Wallace

© 2017, National Apartment Association, Inc. · 3/2017, North Carolina

subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**Obligation to Vacate.** Resident shall vacate the Premises and remove all of Resident's personal property therefrom at the expiration of the lease term without further notice or demand from Owner.

**FORCE MAJEURE:** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

33. **PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 12, late fees under paragraph 6, or utility payments subject to governmental regulations) first

to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

34. **ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

---

## Security Guidelines for Residents

35. **SECURITY GUIDELINES.** In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend you follow the guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY—WHILE INSIDE YOUR APARTMENT**

1.  Lock your doors and windows—even while you're inside.
2.  Engage the keyless deadbolts on all doors while you're inside.
3.  When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4.  If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone—regardless of whether the person is a stranger or an apartment maintenance or management employee.
5.  Don't put your name, address, or phone number on your key ring.
6.  If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks. You have a right to have that done, as long as you pay for the rekeying.
7.  Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8.  Check your smoke detector and carbon monoxide detector monthly to make sure it is working properly and the batteries are still okay.
9.  Check your door locks, window latches, and other devices regularly to be sure they are working properly.
10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management—in writing, dated and signed—any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.
12. Immediately report to management—in writing, dated and signed—any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY—WHILE OUTSIDE YOUR APARTMENT**

15. Lock your doors while you're gone. Lock any door handle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.
25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY—WHILE USING YOUR CAR**

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car—whether it is daylight or dark and whether you are at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.
31. Check the backseat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**

*No security system is failsafe. Even the best systems can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

---

## When Moving Out

36. **MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 21) except under the military clause (paragraph 22). YOUR MOVE-OUT NOTICE WILL NOT COMPLY WITH EACH OF THE FOLLOWING.

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

37. **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the

30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

38. **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

39. **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

40. **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** We may deduct sums from your security deposit for charges related to the following: your possible non-payment of rent, costs of water and sewer services provided, damage to the premises, damage or destruction of smoke detectors or carbon monoxide detectors, nonfulfillment of the rental period, any unpaid bills that become a lien against the demised property due to your occupancy, costs of re-renting the premises after breach by you, including but not limited to any reasonable fees or commissions paid by the landlord to a licensed real estate broker to re-rent the premises, costs of removal and storage of your property after a summary ejectment proceeding, court costs, or any fee authorized by N.C. GEN. STAT. § 42-46.

0421201711154055NN12051652

Katrina Wallace
© 2017, National Apartment Association, Inc. - 3/2017, North Carolina

Case 1:18-cv-00501-LCB-LPA   Document 1-1   Filed 06/13/18   Page 38 of 45

41. **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** If we can determine the full extent of our deductions from your security deposit, we'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, unless statutes provide otherwise. If we cannot determine the full extent of our deductions from your security deposit within the aforementioned 30 day period, we'll mail you an interim itemized accounting of our deductions from the deposit within 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, and we'll also mail your security deposit refund (less lawful deductions) and a final itemized accounting of any deductions no later than 60 days after termination of your tenancy under this Lease Contract and delivery of possession by you.

You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment, and determine any security deposit deductions. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12), but do not affect our mitigation obligations (paragraph 31).

## Signatures, Originals and Attachments

42. **ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☒ Animal Addendum
- ☒ Inventory and Condition Form
- ☒ Mold Addendum
- ☐ Enclosed Garage Addendum
- ☒ Community Policies Addendum
- ☐ Lease Contract Guaranty ( _____ guaranties, if more than one)
- ☒ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: _____)
- ☒ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☐ Lead Hazard Information and Disclosure Addendum (federal)
- ☒ Utility Addendum
- ☐ Remote Control, Card or Code Access Gate Addendum
- ☐ Intrusion Alarm Addendum
- ☐ Other _____
- ☐ Other _____

You are legally bound by this document.
Read it carefully before signing.

Resident or Residents (all sign below)

_Katrina Wallace_

_____

_____

Owner or Owner's Representative (signing on behalf of owner)

_____

Address and phone number of owner's representative for notice purposes

5800 Tattersall Drive

Durham, NC 27713

Name and address of locator service (if applicable)

_____

_____

Date form is filled out (same as on top of page 1) ____ **04/21/2017**

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


Case 1:18-cv-00501-LCB-LPA   Document 1-1   Filed 06/13/18   Page 39 of 45

## COURT COSTS AND FEES CHART

The chart below shows court costs in effect as of **July 15, 2016[1]**, and applies to all costs assessed or collected on or after that date, except where otherwise noted.

| CIVIL COURT COSTS | | | |
|---|---|---|---|
| G.S. 7A-305, unless otherwise specified | | | |
| Civil filing fees are assessed for all complaints <u>and</u> for any subsequent pleading containing a counterclaim, crossclaim, or third-party complaint. | | | Amount |
| MAGISTRATES' COURT. G.S. 7A-305. (except cases under Chapter 50B or 50C[2]) | | | |
| General Court of Justice Fee. G.S. 7A-305(a)(2). | General Fund | 77.55 | |
| | State Bar Legal Aid Account (LAA) | 2.45 | 80.00 |
| Facilities Fee. G.S. 7A-305(a)(1). | | | 12.00 |
| Telecommunications and Data Connectivity Fee. G.S. 7A-305(a)(1a). | | | 4.00 |
| MAGISTRATE TOTAL | | | 96.00 |
| Plus $30.00 service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | | | +30.00 |
| DISTRICT COURT. G.S. 7A-305. (except cases under Chapter 50B or 50C[18]) | | | |
| General Court of Justice Fee. G.S. 7A-305(a)(2). | General Fund | 127.55 | |
| | State Bar Legal Aid Account (LAA) | 2.45 | 130.00 |
| Facilities Fee. G.S. 7A-305(a)(1). | | | 16.00 |
| Telecommunications and Data Connectivity Fee. G.S. 7A-305(a)(1a). | | | 4.00 |
| DISTRICT COURT TOTAL | | | 150.00 |
| Plus $30.00 service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | | | +30.00 |
| SUPERIOR COURT. G.S. 7A-305. | | | |
| General Court of Justice Fee. G.S. 7A-305(a)(2). | General Fund | 177.55 | |
| | State Bar Legal Aid Account (LAA) | 2.45 | 180.00 |
| Facilities Fee. G.S. 7A-305(a)(1). | | | 16.00 |
| Telecommunications and Data Connectivity Fee. G.S. 7A-305(a)(1a). | | | 4.00 |
| SUPERIOR COURT TOTAL | | | 200.00 |
| Business Court Fee, upon assignment. G.S. 7A-305(a)(2). [S.L. 2014-102, § 4] | | | +1,100.00 |
| Plus $30.00 service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | | | +30.00 |



EXHIBIT
2

PENGAD 800-631-6989

| OTHER CIVIL FEES | AMOUNT |
|---|---|
| Service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | 30.00 |
| Alias & Pluries summons or endorsement on original summons. G.S. 7A-308(a)(21).[3] | 15.00 |
| Filing for absolute divorce. G.S. 7A-305(a2). | 75.00 |
| Motion/Notice of Hearing fee. G.S. 7A-305(f).[4] | 20.00 |
| Resumption of former name (within or subsequent to absolute divorce). G.S. 50-12(e). | 10.00 |

| MAGISTRATES SPECIAL FEES (G.S. 7A-309.) | |
|---|---|
| Performing marriage ceremony. G.S. 7A-309(1). | 20.00 |
| Petition for year's allowance. G.S. 7A-309(2). | 8.00 |
| Taking a deposition. G.S. 7A-309(3). | 10.00 |
| Proof of execution or acknowledgment of instrument. G.S. 7A-309(4). | 2.00 |
| Performing any statutory function, not incident to a civil or criminal action. G.S. 7A-309(5). | 2.00 |

---

[1] The General Assembly ended the 2016 short session with little to no changes to court costs and fees. Full text of the 2016 budget bill, SL 2016-94, is available online at http://www.ncleg.net/Sessions/2015/Bills/House/PDF/H1030v1.pdf. Full text of the primary legislation affecting court costs for 2015, SL 2015-241, is available online at http://www.ncleg.net/Sessions/2015/Bills/House/PDF/H97v9.pdf.

[2] No costs may be assessed for the filing, issuance, registration or service of a protective order or a petition for a protective order or witness subpoena under Chapter 50B (Domestic Violence) or 50C (civil no-contact). However:

- Civil District court costs are assessed for a petition for a workplace civil no-contact order filed under Article 23 of Chapter 95; and
- District Court costs must be assessed for amendments and counterclaims to actions filed under Chapter 50B, unless the subsequent claim also arises under that chapter. *E.g.*, if an amended complaint or counterclaim is filed in an existing 50B action, and the new filing makes a claim for divorce, the party filing the amendment or counterclaim is assessed civil filing fees (including the fee for divorce, if applicable).

[3] Although codified in G.S. 7A-308 (miscellaneous fees), the fee for alias and pluries summons and endorsements is limited to "civil matters" only, so it does not apply to summons in special proceedings or estates. As amended effective July 1, 2013, the fee does not apply to any alias & pluries summons or endorsement in an action commenced or prosecuted by a IV-D child support agency. (The fee previously did not apply to actions filed under Chapter 110, Article 9, but that exemption was repealed effective July 1, 2013.) Further, the fee does not apply to a summons or endorsement in domestic violence proceedings under G.S. Chapter 50B. G.S. 50B-2(a).

[4] The motion/notice of hearing fee does not apply to any motion listed in G.S. 7A-308; for a list, see "Appendix – Motion/Notice of Hearing Fee Exemptions" at the end of this cost chart. The fee also does not apply to any motion "containing as a sole claim for relief the taxing of costs, including attorneys' fees," to a motion filed pursuant to G.S. 1C-1602 or 1C-1603 (to designate exemptions from enforcement of a judgment), or to a motion filed by a child support agency established pursuant to Part D of Title IV of the Social Security Act (a "IV-D" agency). No more than one fee shall be assessed for any motion for which a notice of hearing is filed, regardless of whether the hearing is continued, rescheduled, or otherwise delayed.



NORTH CAROLINA
ADMINISTRATIVE OFFICE
*of the* COURTS

## Appendix – Motion/Notice of Hearing Fee Exemptions
Updated Effective August 1, 2013

- **Notice of Hearing on Motion for Costs or Attorney Fees.** G.S. 7A-305(f), 7A-306(g), and 7A-307(a)(4).

  Each of the statutory provisions for the motion/notice of hearing fee provides that the fee is not to be assessed for "a notice of hearing on a motion containing as a sole claim for relief the taxing of costs, including attorneys' fees." Therefore if the only request for relief in the motion is for costs and/or attorney fees, the fee does not apply when the notice of hearing is filed.

- **Notices of Hearing on Motions under G.S. 7A-308.**

  Currently, there are only three motions for which fees are assessed under G.S. 7A-308, and which therefore are exempt from the motion/notice of hearing fee of G.S. 7A-305(f), 7A-306(g), and 7A-307(a)(4). For each of these three motions, the clerk should assess the fee specified in G.S. 7A-308 upon the filing of the motion, not for the filing of a notice of hearing on the motions.

  - (a)(2) Proceedings supplemental to execution [initiated by motion in the cause].

  - (a)(14) Substitution of trustee on a deed of trust [in a judicial foreclosure].

  - (a)(20) Motion to assert a right of access under G.S. 1-72.1 [to a judicial proceeding or record].

- **Civil Actions - Additional Fee-Exempt Motions.** G.S. 7A-305(f).

  Child Support Proceedings – Exemptions for IV-D Agencies

  Pursuant to S.L. 2013-225, § 4.(a), the fee for notices of hearing on motions in civil actions does not apply to motions filed by a child support enforcement agency established pursuant to Part D of Title IV of the Social Security Act.

  This means that the motion/notice of hearing fee shall not be charged to a IV-D agency when the IV-D agency is the filer of the motion.

  Domestic Violence Proceedings

  Because any motion filed in a proceeding under Chapter 50B of the General Statutes (e.g., for contempt for violation of the order) may be necessary to the enforcement of such order, and because court costs may not be assessed for actions associated with a protective order, pursuant to G.S. 50B-2(a), the fee should not be assessed for notices of hearing on motions for the enforcement or modification of orders under Chapter 50B.

- **Special Proceedings - Additional Fee-Exempt Motions.** G.S. 7A-306(f).

  Pursuant to G.S. 7A-306(f), the costs in that statute do not apply to foreclosures under power of sale in a deed of trust or mortgage, so the motion fee is not to be assessed in those proceedings.

- **Estates - No Additional Exemptions.** G.S. 7A-307(a)(4).

  Other than motions for costs and attorney fees and motions under G.S. 7A-308, listed above, there are no exemptions from the motion/notice of hearing fee in estate cases.

# COURT COSTS AND FEES CHART

The chart below shows court costs in effect as of **August 1, 2017[1]** and applies to all costs assessed or collected on or after that date, except where otherwise noted.

| CIVIL COURT COSTS G.S. 7A-305, unless otherwise specified Civil filing fees are assessed for all complaints and for any subsequent pleading containing a counterclaim, crossclaim, or third-party complaint. | | | Amount |
|---|---|---|---|
| MAGISTRATES' COURT. G.S. 7A-305. (except cases under Chapter 50B or 50C[2]) | | | |
| General Court of Justice Fee. G.S. 7A-305(a)(2). | General Fund | 79.05 | |
| | State Bar Legal Aid Account (LAA) | 0.95[3] | 80.00 |
| Facilities Fee. G.S. 7A-305(a)(1). | | | 12.00 |
| Telecommunications and Data Connectivity Fee. G.S. 7A-305(a)(1a). | | | 4.00 |
| MAGISTRATE TOTAL | | | 96.00 |
| Plus $30.00 service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | | | +30.00 |
| DISTRICT COURT. G.S. 7A-305. (except cases under Chapter 50B or 50C[1B]) | | | |
| General Court of Justice Fee. G.S. 7A-305(a)(2). | General Fund | 129.05 | |
| | State Bar Legal Aid Account (LAA) | 0.95 | 130.00 |
| Facilities Fee. G.S. 7A-305(a)(1). | | | 16.00 |
| Telecommunications and Data Connectivity Fee. G.S. 7A-305(a)(1a). | | | 4.00 |
| DISTRICT COURT TOTAL | | | 150.00 |
| Plus $30.00 service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | | | +30.00 |
| SUPERIOR COURT. G.S. 7A-305. | | | |
| General Court of Justice Fee. G.S. 7A-305(a)(2). | General Fund | 179.05 | |
| | State Bar Legal Aid Account (LAA) | 0.95 | 180.00 |
| Facilities Fee. G.S. 7A-305(a)(1). | | | 16.00 |
| Telecommunications and Data Connectivity Fee. G.S. 7A-305(a)(1a). | | | 4.00 |
| SUPERIOR COURT TOTAL | | | 200.00 |
| Business Court Fee, upon assignment. G.S. 7A-305(a)(2). [S.L 2014-102, § 4] | | | +1,100.00 |
| Plus $30.00 service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | | | +30.00 |



EXHIBIT 3



NORTH CAROLINA
ADMINISTRATIVE OFFICE
*of the* COURTS

| OTHER CIVIL FEES | AMOUNT |
|---|---|
| Service fee for each item of civil process served by the sheriff. G.S. 7A-311(a)(1). | 30.00 |
| Alias & Pluries summons or endorsement on original summons. G.S. 7A-308(a)(21).[4] | 15.00 |
| Filing for absolute divorce. G.S. 7A-305(a2). | 75.00 |
| Motion/Notice of Hearing fee. G.S. 7A-305(f).[5] | 20.00 |
| Resumption of former name (within or subsequent to absolute divorce). G.S. 50-12(e). | 10.00 |
| Discovery fee for depositions taken before action or pending appeal[6] | 20.00 |

| MAGISTRATES SPECIAL FEES (G.S. 7A-309.) | |
|---|---|
| Performing marriage ceremony. G.S. 7A-309(1). | 20.00 |
| Petition for year's allowance. G.S. 7A-309(2). | 8.00 |
| Taking a deposition. G.S. 7A-309(3). | 10.00 |
| Proof of execution or acknowledgment of instrument. G.S. 7A-309(4). | 2.00 |
| Performing any statutory function, not incident to a civil or criminal action. G.S. 7A-309(5). | 2.00 |

[1]The General Assembly ended the 2017 long session with minimal changes to civil court costs and fees. Full text of the 2017 budget bill, SL 2017-57, is available online at http://www.ncleg.net/EnactedLegislation/SessionLaws/PDF/2017-2018/SL2017-57.pdf. The other primary legislation affecting civil costs is HB 528, which became law at 12:01 a.m. on July 31, 2017, but does not have a session law number assigned to it yet. Full text of HB 528 is available at http://www.ncleg.net/Sessions/2017/Bills/House/PDF/H528v5.pdf.

[2]No costs may be assessed for the filing, issuance, registration or service of a protective order or a petition for a protective order or witness subpoena under Chapter 50B (Domestic Violence) or 50C (civil no-contact). However:

- Civil District court costs are assessed for a petition for a workplace civil no-contact order filed under Article 23 of Chapter 95; and
- District Court costs must be assessed for amendments and counterclaims to actions filed under Chapter 50B, unless the subsequent claim also arises under that chapter. E.g., if an amended complaint or counterclaim is filed in an existing 50B action, and the new filing makes a claim for divorce, the party filing the amendment or counterclaim is assessed civil filing fees (including the fee for divorce, if applicable).

[3]Clerks will still collect a total GCF cost(s) listed above. However, $1.50 of the GCJ costs will no longer be allocated to the N.C. State Bar for legal services provided under the former Access to Civil Justice Act. The $0.95 LAA fee will continued to be allocated to the N.C. State Bar for support of legal services under the Domestic Violence Victim Assistance Act, G.S. Chapter 7A, Article 37B. The LAA allocation change was made in S.L. 2017-57 and HB 528. The civil bill of costs (AOC-CV-382) will be updated to reflect this change.

[4]Although codified in G.S. 7A-308 (miscellaneous fees), the fee for alias and pluries summons and endorsements is limited to "civil matters" only, so it does not apply to summons in special proceedings or estates. As amended effective July 1, 2013, the fee does not apply to any alias & pluries summons or endorsement in an action commenced or prosecuted by a IV-D child support agency. (The fee previously did not apply to actions filed under Chapter 110, Article 9, but that exemption was repealed effective July 1, 2013.) Further, the fee does not apply to a summons or endorsement in domestic violence proceedings under G.S. Chapter 50B. G.S. 50B-2(a).

[5] The motion/notice of hearing fee does not apply to any motion listed in G.S. 7A-308; for a list, see "Appendix – Motion/Notice of Hearing Fee Exemptions" at the end of this cost chart. The fee also does not apply to any motion "containing as a sole claim for relief the taxing of costs, including attorneys' fees," to a motion filed pursuant to G.S. 1C-1602 or 1C-1603 (to designate exemptions from enforcement of a judgment), or to a motion filed by a child support agency established pursuant to Part D of Title IV of the Social Security Act (a "IV-D" agency). No more than one fee shall be assessed for any motion for which a notice of hearing is filed, regardless of whether the hearing is continued, rescheduled, or otherwise delayed.



Case 1:18-cv-00501-LCB-LPA   Document 1-1   Filed 06/13/18   Page 44 of 45

## Appendix – Motion/Notice of Hearing Fee Exemptions
Updated Effective August 1, 2013

- **Notice of Hearing on Motion for Costs or Attorney Fees.** G.S. 7A-305(f), 7A-306(g), and 7A-307(a)(4).

  Each of the statutory provisions for the motion/notice of hearing fee provides that the fee is not to be assessed for "a notice of hearing on a motion containing as a sole claim for relief the taxing of costs, including attorneys' fees." Therefore if the only request for relief in the motion is for costs and/or attorney fees, the fee does not apply when the notice of hearing is filed.

- **Notices of Hearing on Motions under G.S. 7A-308.**

  Currently, there are only three motions for which fees are assessed under G.S. 7A-308, and which therefore are exempt from the motion/notice of hearing fee of G.S. 7A-305(f), 7A-306(g), and 7A-307(a)(4). For each of these three motions, the clerk should assess the fee specified in G.S. 7A-308 upon the filing of the motion, not for the filing of a notice of hearing on the motions.

  - (a)(2) Proceedings supplemental to execution [initiated by motion in the cause].

  - (a)(14) Substitution of trustee on a deed of trust [in a judicial foreclosure].

  - (a)(20) Motion to assert a right of access under G.S. 1-72.1 [to a judicial proceeding or record].

- **Civil Actions - Additional Fee-Exempt Motions.** G.S. 7A-305(f).

  Child Support Proceedings – Exemptions for IV-D Agencies

  Pursuant to S.L. 2013-225, § 4.(a), the fee for notices of hearing on motions in civil actions does not apply to motions filed by a child support enforcement agency established pursuant to Part D of Title IV of the Social Security Act.

  This means that the motion/notice of hearing fee shall not be charged to a IV-D agency when the IV-D agency is the filer of the motion.

  Domestic Violence Proceedings

  Because any motion filed in a proceeding under Chapter 50B of the General Statutes (e.g., for contempt for violation of the order) may be necessary to the enforcement of such order, and because court costs may not be assessed for actions associated with a protective order, pursuant to G.S. 50B-2(a), the fee should not be assessed for notices of hearing on motions for the enforcement or modification of orders under Chapter 50B.

- **Special Proceedings - Additional Fee-Exempt Motions.** G.S. 7A-306(f).

  Pursuant to G.S. 7A-306(f), the costs in that statute do not apply to foreclosures under power of sale in a deed of trust or mortgage, so the motion fee is not to be assessed in those proceedings.

- **Estates - No Additional Exemptions.** G.S. 7A-307(a)(4).

  Other than motions for costs and attorney fees and motions under G.S. 7A-308, listed above, there are no exemptions from the motion/notice of hearing fee in estate cases.