IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:18-cv-00501-LCB-LPA

| | | |
|---|---|---|
| KATRINA WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREYSTAR REAL ESTATE | ) | **AMENDED COMPLAINT** |
| PARTNERS, LLC; GREYSTAR GP II, | ) | |
| LLC; GREYSTAR MANAGEMENT | ) | |
| SERVICES, L.P.; GREYSTAR RS | ) | **(Class Action)** |
| NATIONAL, INC.; GREYSTAR RS SE, | ) | |
| LLC; GREP SOUTHEAST, LLC; and | ) | |
| INNESBROOK APARTMENTS, | ) | |
| LLC d/b/a SOUTHPOINT GLEN, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Katrina Wallace (hereafter "Plaintiff" or "Wallace"), on behalf of herself and the proposed Class, files this Amended Complaint against Defendants Greystar Real Estate Partners, LLC, Greystar GP II, LLC, Greystar Management Services, L.P., Greystar RS National, Inc., Greystar RS SE, LLC, GREP Southeast, LLC, and Innesbrook Apartments, LLC d/b/a Southpoint Glen LLC (hereinafter "Defendants" or "Greystar") and states:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff Katrina Wallace and others similarly situated due to unlawful and unfair debt collection practices engaged in by Defendants in their attempts to collect upon fees, penalties, and other improper charges, when such costs, fees, charges, and amounts are not owed and expressly prohibited.

2.     This case arises under the Residential Rental Agreements Act, N.C.G.S. § 42-38 *et seq.,* the Uniform Commercial Code - Negotiable Instruments, N.C.G.S. § 25-3-506, the

North Carolina Debt Collection Act, N.C.G.S. § 75-50 *et seq*., the North Carolina common law of contracts, and the Uniform Declaratory Judgment Act, N.C.G.S. § 1-253, *et seq*.

3.     This is a class action, filed pursuant to Rule 23 of the North Carolina Rules of Civil Procedure on behalf of all tenants of any North Carolina apartment complex in which Greystar provides property management services, including but not limited to tenants of the apartment complex owned by Innesbrook Apartments, LLC d/b/a Southpoint Glen Apartments ("Southpoint Glen Apartments") in Durham, North Carolina who pursuant to Defendants' standardized policies and procedures, have during the past four (4) years or will in the future (a) receive one or more communications from Defendants that violate North Carolina law as further set forth herein, and/or (b) have paid amounts in excess of those allowed by North Carolina law.

## JURISIDICTION AND VENUE

4.     The foregoing allegations are incorporated by reference and realleged herein.

5.     This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. § 42-44, N.C.G.S. § 25-1-305, N.C.G.S. §§ 75-16 and 56, N.C.G.S.  § 1-75.4 and N.C.G.S. § 1-253.

6.     Venue is proper under N.C.G.S. § 1-79 in that Defendants maintain a place of business in Durham County, North Carolina, and have regularly engaged in business in Durham County, North Carolina.

## PARTIES

7.     The foregoing allegations are incorporated by reference and realleged herein.

8.     Plaintiff Katrina Wallace is a citizen and resident of Durham County, North Carolina who at all relevant times, leased an apartment from Defendants at Southpoint Glen

Apartments with her three-year-old daughter.

9.    Plaintiff is a "tenant" subject to the protections of N.C.G.S. § 42-46.

10.   Plaintiff is a "consumer" as defined by N.C.G.S. § 75-50.

11.   Defendant Greystar Real Estate Partners, LLC is, upon information and belief, a limited liability company organized under the laws of the state of South Carolina, maintains a business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina. Upon information

12.   Upon information and belief, Greystar Real Estate Partners, LLC owns, has owned, or was the purchasing entity for various Greystar physical properties in North Carolina.

13.   Defendant Greystar GP II, LLC, is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

14.   Defendant Greystar Management Services, L.P., upon information and belief, a limited partnership incorporated under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

15.   Greystar RS National, Inc. is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

16.   Greystar RS SE, LLC is, upon information and belief, a limited liability

3

company organized under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina.

17.     GREP Southeast, LLC is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, maintains a place of business in Durham County, North Carolina, and has regularly engaged in business in Durham County, North Carolina. GREP Southeast, LLC is managed by two managers, including Greystar Management Services, L.P.

18.     Innesbrook Apartments, LLC d/b/a Southpoint Glen Apartments is, upon information and belief, a limited liability company organized under the laws of the state of Delaware, and has regularly engaged in business in Durham County, North Carolina. Innesbrook Apartments, LLC holds itself out to the public as the "Southpoint Glen Apartments."

19.     Upon information and belief, GREP Southeast, LLC, is purportedly the only property management company for Southpoint Glen Apartments and other North Carolina properties.

20.     Upon information and belief, Defendant GREP Southeast, LLC employs the persons and other entities to operate the properties in North Carolina, including the Southpoint Glen Apartments.

21.     Upon information and belief, with respect to all actions and decisions to this action, Defendants have operated as a single entity, including:

       a.   Using and maintaining the same "Senior Director of Technology Services"

for Defendants Greystar Real Estate Partners, LLC, Greystar GP II, LLC, Greystar Management Services, L.P., Greystar RS National, Inc., Greystar RS SE, LLC, GREP Southeast, LLC, and Innesbrook Apartments, LLC. *See e.g.,* Bunt Decl. ¶ 1, Document No. 1-3.

 b. Managing together "198 apartment complexes in North Carolina in the last four years." *See e.g., Id.* at ¶ 2.

 c. Providing housing services to in excess of "Thirty Thousand (30,000) individual tenants in the last four years" in North Carolina alone. *See e.g., Id.* at ¶ 6.

 d. Having the same or similar "electronic property management systems for each of the North Carolina properties managed by the Greystar Defendants in North Carolina in the last four years for files of individual tenants" that allowed the Senior Director of Technology Services to undertake exhaustive tenant searches. *See e.g., Id.* at ¶ 5.

 e. Charging "Thirty Thousand (30,000) individual tenants" "attorney, legal, court, eviction, filing, Sheriff, or service" "costs and fees" in North Carolina alone. *See e.g., Id.* at ¶ 5-6.

 22. Although GREP Southeast, LLC is purportedly the only property management company engaged in the work and business of Southpoint Glen Apartments and Greystar's other North Carolina properties, an individual North Carolina tenant would have no reason to know that such an entity was in any way involved in providing property management services. A tenant would simply know that "Greystar" is the owner and property manager of the Sterling

Glen Apartments.

23.     Defendants held themselves out to the North Carolina public, including Plaintiff, as if each of the entities were operating as a single entity known as "Greystar," including by way of example:

> a. In each of the electronic communications with Plaintiff and other North Carolina residents, Southpoint Glen's representatives confirmed that the communications were being sent by Southpoint Glen on behalf of "Greystar."
>
> b. In each of the electronic communications with Plaintiff and other North Carolina residents, agents of Southpoint Glen stated that it was "Proudly managed by Greystar."
>
> c. When agents of Southpoint Glen communicated with Plaintiff and other North Carolina residents, it regularly utilized the email address: southpointglenacm@greystar.com.
>
> d. In the "Initial Collection Letters" defined below, and in other written correspondence sent to Plaintiff and other North Carolina residents, the form letters stated they were being sent from "Southpoint Glen A Greystar Community."
>
> e. In the "Initial Collection Letters" defined below, and in other written correspondence sent to Plaintiff and other North Carolina residents, the form letters stated that the website for Southpoint Glen was located at www.southpointglen.com. The frontpage of this website prominently displayed that Southpoint Glen was associated with "Greystar" and that the

6

website was "Professionally Managed by Greystar."

f. The frontpage for greystar.com identifies that the website is managed by "Greystar Real Estate Partners, LLC."

g. The webpage for greystar.com repeatedly refers to the innumerable functions as being performed by "Greystar," including "Property Management Services," Investment Management Services," and "Development and Construction Services."

h. When Plaintiff (and other North Carolina residents) received a written "Notice to Vacate" from Defendants, it included a signature line for "Agent for Greystar Management," which appears to reference Greystar Management Services, L.P.

i. The website for "Greystar" specifically identifies Southpoint Glen Apartments as being a "Greystar Community."

j. The website for "Greystar" directly links the specific website for Southpoint Glen Apartments.

k. The website for "Greystar" directly links the "resident portal" for Southpoint Glen Apartments.

l. Upon information and belief, the website for Greystar does not delineate between the specific Greystar entities but instead treats them as the aggregate entity known as "Greystar."

24. Upon information and belief, at all times pertinent to this action, the finances, policies, and business practices of Defendants are and were dominated and controlled by one

7

another in such a manner that each individual Defendant has no separate mind, will, identity or existence of its own and instead operated as mere instrumentalities and alter egos of one another.

25.     Upon information and belief, Defendants are so closely related in ownership and management, and that each works closely in concert with the other, such that each has become the *alter ego* of the other, in that, among others:

      a.  Defendants operate and hold themselves out to the public as a single entity known as "Greystar."

      b.  With respect to all actions and decisions in North Carolina pertinent to this action, Defendants have operated as a single entity known as "Greystar."

      c.  Defendants operate and hold themselves out to the public in such a way that members of the public would be unable to identify and distinguish between one "Greystar" entity and another.

26.     Any such conduct in violation of North Carolina law by one Defendant should be imputed to each other Defendant.

27.     Defendants are each "landlords" as defined by N.C.G.S. §42-40(3).

28.     At all times relevant to this action, Defendants, in the ordinary course of business as the lessors of residential real property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. §75-1.1.

29.     Defendants are each "debt collectors" as defined by N.C.G.S. § 75-50.

## GENERAL BACKGROUND

30.     The foregoing allegations are incorporated by reference and realleged herein.

8

31.     Upon information and belief, at all times relevant to the allegations contained herein, Defendants entered into lease agreements with all North Carolina tenants that state "[i]n the event we file a summary ejectment lawsuit against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs..." See attached **Exhibit 1** (emphasis in original). The lease agreements immediately identify and describe three fees: a Complaint Filing Fee, a Court Appearance Fee, and a Second Trial Fee.

32.     The Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee are the same fees described in N.C.G.S. § 42-46 (e) through (g).

33.     Upon information and belief, at all times relevant to the allegations contained herein, Defendants have maintained a uniform, statewide policy of requiring any North Carolina tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 after the 16th day of any given month to pay filing fees ("Filing Fees"), sheriff service fees ("Service Fees"), and attorneys' fees ("Attorneys' Fees") (collectively the Filing Fees, Service Fees, and Attorneys' Fees are referred to as the "Eviction Fees") (herein described as the ("Collection Policy").

34.     Eviction Fees are additional fees separate and apart from the ones expressly authorized by N.C.G.S. § 42-46.[1]

35.     Eviction Fees are fees set by the North Carolina Legislature for filing a

---

[1] In direct response to the Honorable A. Graham Shirley, Wake County Superior Court Judge, holding that the claiming of Eviction Fees was unlawful [**See Exhibit 11**], landlords petitioned and successfully altered the law. On June 25, 2018, S.L. 2018-50, entitled "An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases" was enacted to amend N.C.G.S. § 42-46 ("the Act"). [See attached **Exhibit 12**]. The Act confirms that Defendants were not previously allowed to automatically charge tenants the Eviction Fees.

complaint in summary ejectment and for service of process by a sheriff.

36. Upon information and belief, Defendants entered into a legal services agreement with a law firm that charges a flat fee per eviction. Upon information and belief, this legal services agreement limits the scope of the law firm's representation to only seeking possession of the apartment premises on behalf of Defendants and not any money owed.

37. Upon information and belief, throughout the Relevant Time Period, the Filing Fees were $96.00 and the Service Fees were $30.00. *See* **Exhibit 2** and **Exhibit 3**.

38. When a tenant fails to make a full and complete rental payment, or maintains a rental balance on their account ledger in excess of $0.00 after the 12th day of any given month, Defendants cause written letters or emails to be delivered to the tenant stating that the tenant "will also be charged for court costs" if he or she fails to make a complete rental payment (hereinafter "Initial Collection Letter").

39. An exemplar of the Initial Collection Letter is attached as **Exhibit 4**.

40. The "court costs" referred to in the Initial Collection Letter is the same as Eviction Fees described herein.

41. Upon information and belief, pursuant to the Collection Policy, tenants owe, and are required to pay Eviction Fees even if: (a) the complaint in summary ejectment had not yet even been filed; (b) the complaint in summary ejectment is dismissed; or (c) a North Carolina Magistrate Judge orders the Eviction Fees to be assessed against Defendants.

42. Upon information and belief, each and every tenant of a property owned or managed by Defendants, or either of them, is subject to the Collection Policy.

43. Upon information and belief, the Collection Policy is uniformly applied to each and every tenant that resides at any of the apartments owned or managed by Defendants.

10

44.     Upon information and belief, the Collection Policy is mandatory throughout Defendants' properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

45.     Upon information and belief, pursuant to the Collection Policy, when a tenant fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or around the 16th day of any given month, Defendants file legal action to evict the tenant.

46.     Immediately before filing legal action to evict a tenant, or shortly thereafter, Defendants post to the tenant's account ledger all Eviction Fees as immediately due and owing.

47.     All the Eviction Fees are posted to a tenant's account ledger are in addition to, and separate from, the late fees and the fees specifically authorized by N.C.G.S. § 42-46, including the "Complaint-Filing Fee."

48.     Upon information and belief, pursuant to the Collection Policy, Eviction Fees are entered into a tenant's account ledger prior to a North Carolina court awarding such amounts to Defendants, and sometimes before a complaint in summary ejectment is even filed.

49.     At the time the Eviction Fees are entered into the account ledger as immediately due and owing, there is no guarantee that Defendants will ever be awarded such fees by a North Carolina court.

50.     Upon information and belief, entering the Eviction Fees on a tenant's account ledger as immediately due and owing is mandatory throughout Defendants' North Carolina properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

51.     Upon information and belief, after causing the Eviction to be assessed against the

11

tenant's account ledger, and with no guarantee such amounts will ever be awarded by a North Carolina court, Defendants immediately begin attempting to collect upon the balance contained on the account ledger pursuant to its Collection Policy.

52.     Upon information and belief, after the Eviction Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will review and reconsider whether such Eviction Fees were improperly assessed.

53.     Upon information and belief, even if a complaint in summary ejectment filed against a tenant is dismissed or not awarded, there are no occasions in which Defendants will review and reconsider whether such Eviction Fees were improperly assessed.

54.     Upon information and belief, after the Eviction Fees are entered onto an tenant's account ledger, there are no occasions in which Defendants will remove such Eviction Fees from an individual tenant's account ledger.

## <u>WALLACE'S FACTS</u>

55.     Wallace entered into a lease contract with Defendants for an apartment in Southpoint Glen Apartments, 5901 Tattersail Drive, Apt. 12, Durham, North Carolina, 27713 ("Apartment 12") for a period from April 23, 2017 through June 21, 2018 (the "Lease"). The Lease is attached hereto as **Exhibit 1**.

56.     The Lease stated that "[i]n the event we file a summary ejectment lawsuit against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs)…" and immediately identified and described the Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee.

57.     Wallace lived in Apartment 12 with her three-year-old daughter.

58.     Pursuant to the Lease, Wallace's total monthly rent for Apartment 12 is $871.00.

12

59.     After experiencing painful migraines for a significant period of time, Wallace visited a neurologist on October 3, 2017 and underwent an MRI. On October 5, 2017, her neurologist diagnosed her with encephalocele and recommended that she undertake immediate brain surgery to that required immediate surgery to repair openings in her skull that were leaking brain fluid.

60.     On November 13, 2017, Wallace underwent brain surgery to repair her skull. On November 20, 2017, Wallace was required to undergo a second brain surgery. As a result of the two brain surgeries, she was hospitalized for a total of nine (9) days.

61.     As a result of her condition, Wallace was unable to return to work at BioMerieux and has since been placed on disability.

62.     Although Wallace was not able to work from October 27, 2017 to present, she had savings that, along with her final paycheck and a small insurance payment, was sufficient to pay rent in November, December, and January 2018.

63.     Unfortunately, in February of 2018, Wallace exhausted her finances and determined that she was going to be unable to meet the entirety of her rental obligations.

64.     On February 6, 2018, Wallace was late making a rental payment and was charged $43.55 pursuant to N.C.G.S. § 42-46(a). See attached **Exhibit 5**.

65.     On or about February 12, 2018, Wallace received the Initial Collection Letter. An exemplar of the letter that she received, but from a different date, is attached as **Exhibit 4**.

66.     On February 12, 2018, Wallace went to her bank, State Employees' Credit Union, and requested a money order for approximately $358.86 to be addressed to "SouthPoint Glen." She also requested a print-out of her bank accounts showing approximately a $25 balance, the minimum amount her bank required her to maintain in her account.

13

67.     Wallace then immediately went to the North Carolina Division of Social Services ("Social Services") to request assistance with her rent. That same day, after reviewing her banking and leasing information, Social Services confirmed that they would provide a total payment of $600 ($400 from the "Temporary Assistance to Needy Families Program" and $200 from the "County Emergency Assistance-Preventative Program") directly to Greystar and provided Wallace with written confirmation to provide to the property manager. The written confirmation is attached hereto as **Exhibit 6 and Exhibit 7**.

68.     Wallace went to the front office that same afternoon and provided the partial money order and the written confirmations from Social Services to Brook Griffin. Ms. Griffin told her that they could not accept the voucher and would only accept "certified check or money order." Wallace told her that the check was coming in the mail directly to Greystar but was told that it "did not matter."

69.     On February 13, 2018, Wallace, along with all other Southpoint Glen residents who were late, received an email that stated: "Please note that all unpaid accounts have now been filed on for possession. To dismiss the eviction filing, please include the filing fee. ($201 for one lease holder; $231 for two lease holders; $261 for three lease holders.)" See attached **Exhibit 8**.

70.     Upon information and belief, on February 13, 2018, Southpoint Glen requested its eviction lawyers to begin the eviction process on Wallace and all other Southpoint Glen residents who were late.

71.     In a February 16, 2018 email to Wallace, Defendants claimed that "[t]he cost of eviction is the responsibility of the tenant per NC tenant law 42-33." See attached **Exhibit 9**. Upon information and belief, Defendants were referring to N.C.G.S. § 42-33.

14

72.     On or about February 16, 2018, before the complaint in summary ejectment against Wallace was actually filed, the Eviction Fees, described on the ledger as "Legal Fees," were placed on her account ledger in the amount of $201.00. See attached **Exhibit 5.**

73.     The "Legal Fees" referred to on Wallace's ledger are the same fees described as "filing fees" in the Initial Collection Letter, and are the same as the Eviction Fees described herein.

74.     At the time the Eviction Fees were placed on Wallace's ledger, no hearing had been held and no attorney had appeared in Court to evict Wallace and/or seek the award of Eviction Fees.

75.     At the time the Eviction Fees were placed on Wallace's ledger, no attorney had been hired by Defendants to collect any debt.

76.     At the time the Eviction Fees were placed on Wallace's ledger, Defendants had not served her with the complaint in summary ejectment.

77.     In fact, at the time the Eviction Fees were placed on Wallace's ledger, Defendants had not even filed the complaint in summary ejectment.

78.     Upon information and belief, Defendants always placed the Eviction Fees on individual tenant ledgers prior to filing and serving a complaint in summary ejectment.

79.     On or about February 19, 2018, Defendants filed the Complaint in Summary Ejectment in the Small Claims Division of Durham County General Court of Justice, alleging Wallace owed $871.00 in past due rent. See attached **Exhibit 10**. In its February 20 Summary Ejectment Complaint, Defendants wrote that they "hereby omit[] any claim for rents or damages and is seeking possession of the premises only. [Defendants] reserve[] the right to seek any monetary damages in a separate civil action."  See attached **Exhibit 10**.

15

80.     On February 21, 2017, Wallace was forced to borrow $201 from her mother to pay the Eviction Fees to avoid being evicted with her three-year-old daughter.

81.     Defendants did not obtain service on Wallace until February 22, 2018, approximately one full week after placing the Eviction Fees on her tenant ledger and a full day after Wallace paid all Eviction Fees alleged to be owed by Defendants.

82.     After Wallace paid the Eviction Fees, Defendants filed a notice of voluntary dismissal without prejudice.

83.     By filing a notice of voluntary dismissals without prejudice, Defendants were not the prevailing party.

84.     Upon information and belief, Defendants only file notices of voluntary dismissals without prejudice when its tenants pay Eviction Fees prior to obtaining a judgment for possession.

85.     At no point did Wallace enter into a settlement agreement with Defendants regarding the Eviction Fees.

86.     At no point did a North Carolina judge award any portion of the Eviction Fees to Defendants. At no point did a North Carolina judge assess any portion of the Eviction Fees against Wallace.

87.     At no point did Defendants employ a law firm to collect upon any debt alleged to be owed by Wallace.

## COMMON CLASS ALLEGATIONS

88.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

89.     Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff

brings this action individually and on behalf of the two classes:

**The Initial Collection Letter Class (represented by Plaintiff):**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through June 25, 2018 (b) resided in one of the apartments owned or managed by Defendants' in North Carolina (c) were sent the Initial Collection Letter that (d) threatened to charge Eviction Fees in order to dismiss the eviction action.

**The Fee Class (represented by Plaintiff):**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through June 25, 2018 (b) resided in one of the apartments owned or managed by Defendants' in North Carolina (c) were charged and (d) actually paid Eviction Fees prior to a North Carolina court awarding such Eviction Fees to Defendants.

90.     Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants has a controlling interest in Defendants and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the classes.

91.     *Commonality*: All questions concerning Defendants' Collection Policy and Defendants' sending the Initial Collection Letter are common. Whether Defendants may lawfully charge Eviction Fees separate from and in addition to what is authorized by N.C.G.S. § 42-46 is a question that is common for all members of the classes. Each and every member of the proposed Class is subject to Defendants' policies and procedures. Further, the answer to this question will drive other answers in the litigation, including whether the Initial Collection Letter is lawful and whether any portion of Defendants' lease is void and unenforceable.

92. *Predominance:* Common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice and policy of charging tenants Eviction Fees after the 16th day of the month as described herein. These questions include, but are not limited to:

     a. Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* in that Defendants represent that a specific amount of debt may be increased by Eviction Fees prior to the award of such amounts by a North Carolina court;

     b. Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees was illegal under N.C.G.S. §§ 42-46 and 75-50 *et seq*;

     c. Whether Defendants' pattern, practice, and policy of utilizing the Initial Collection Letters violated N.C.G.S. §§ 42-46 and 75-50 *et seq* by falsely representing Defendants' ability to collect Eviction Fees;

     d. Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees violated N.C.G.S. § 75-1.1 *et seq.*;

     e. Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. § 75-1.1 *et seq.* in that Defendants refused to refund Eviction Fees after a Court taxes the cost of the action against Defendants.

     f. Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Attorneys' Fees were in violation of N.C.G.S. §§ 6-21.2, 42-46, and 75-50 *et seq.* in that Defendants' attorneys were not

collecting upon any debt;

g. Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees constituted a violation of N.C.G.S. § 75-1.1 *et seq.* in that Defendants unlawfully claimed Attorneys' Fees were due and owing despite the absence of any statutory authority granting such fees.

h. Whether any portion of Defendants' lease was void and unenforceable because it contained a fee for filing a complaint for summary ejectment and/or money owed other than the fees expressly authorized by N.C.G.S. § 42-46 (e) through (g).

93. *Numerosity*: The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are readily identifiable through the business records maintained by Defendants, and may be notified of the pendency of this action by published and/or mailed notice. Members of the classes include hundreds of present and former tenants of Defendants' Apartments who have been charged with Eviction Fees in violation of the law.

94. *Typicality*: The claims of the Plaintiff are typical of the claims of the proposed classes and all are based on the same facts and legal theories, as all such claims arise out of Defendants' conduct in that Defendants had a specific policy of attempting to unlawfully collect debt from each member of the proposed classes Eviction Fees following the expiration of the 16th day of the month.

95. *Adequate Representation*: The Plaintiff is an adequate representative of the class in that the Plaintiff does not have antagonistic or conflicting claims with other members of the class. Plaintiff has also retained counsel experienced in the prosecution of complex class actions

19

and consumer litigation. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

96.     *Superiority*: A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs anticipate no difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

97.     Further, Defendants have acted and refused to act on grounds generally applicable to the proposed class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

**FIRST CAUSE OF ACTION:**
**Violation of the North Carolina Residential Rental Agreements Act**
**N.C.G.S. § 42-46**
**(on behalf of all classes)**

98.     All paragraphs of this Amended Complaint are incorporated herein as if fully restated.

99.     Defendants' conduct as described above is subject to N.C.G.S. § 42-46 of the Residential Rental Agreements Act.

100.     N.C.G.S. § 42-46(e)-(h) specifically limits the amounts that can be charged to a tenant for eviction related fees. Any amounts charged in excess of this limitation is against North Carolina's public policy and therefore void and unenforceable.

101.     The Eviction Fees charged by Defendants to Plaintiff and members of the Class were separate from and in excess of the amount allowed under N.C.G.S. § 42-46 and constituted

20

a violation of North Carolina law.

102.    The amount of Eviction Fees charged by Defendants to Plaintiff and other members of the Class were in excess of the amounts allowed under N.C.G.S. § 42-46.

103.    As a proximate result of Defendants' conduct, Plaintiff and all members of the Class were damaged and are entitled to recover all amounts of Eviction Fees paid to Defendants in violation of N.C.G.S. § 42-46. This amount is in excess of $25,000.

**SECOND CAUSE OF ACTION**
**Violation of North Carolina Debt Collection Act**
**N.C.G.S. § 75-50, *et seq.***
**(on behalf of all classes)**

104.    All paragraphs of this Amended Complaint are incorporated herein as if fully restated.

105.    Plaintiff and each member of the Class is a "consumer," as that term is defined by N.C.G.S. § 75-50.

106.    The amount purportedly owed to Defendants by Plaintiff and each member of the Proposed Class is a "debt," as that term is defined by N.C.G.S. § 75-50.

107.    At all times relevant to this action, Defendants, in the ordinary course of business as lessors of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1.

108.    Defendants, in seeking to recover past due rent, fees, and other charges, are "debt collectors" as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

109.    Defendants' actions described above constitute the collection of a "debt" under N.C.G.S. § 75-50.

110.    Defendants are subject to the requirements of N.C.G.S. § 75-50 *et seq.*, that

21

prohibits certain activities by debt collectors.

111.     The Initial Collection Letter violated N.C.G.S. § 75-50 *et seq.* by threatening to take actions that Defendants could not lawfully take.

112.     Defendants violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law.

113.     Defendants violated N.C.G.S. § 75-51(8) by threatening to take and taking actions not permitted by law, including, *inter alia*, threatening to assess and collect Eviction Fees without a legal justification.

114.     Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, threatening to assess and collect Eviction Fees without a legal justification.

115.     Defendants' communications to Plaintiff and members of the Class constituted "communications attempting to collect a debt" subject to the disclosure requirement of N.C.G.S. § 75-54(2).

116.     Defendants' violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means.

117.     A violation of N.C.G.S § 42-46 constitutes an unfair debt collection attempt under N.C.G.S.§ 75-50 *et seq.*

118.     Defendants collected or attempted to collect from Plaintiff and members of the class a charge, fee or expense incidental to the principal debt of the monthly rent owed, that was legally prohibited under N.C.G.S. 42-46, in violation of N.C.G.S. § 75-51(8), N.C.G.S. § 75-54, and N.C.G.S. §75-55 (2).

119.    Defendants actions in violation of North Carolina's Unfair Debt Collection Act were willful.

120.    Plaintiff and each member of the Class were injured by Defendants' actions and are entitled to damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 per violation resulting from each of Defendants' unfair debt collection practices pursuant to N.C.G.S. §75-56.

121.    Plaintiff and each member of the Class were injured and sustained damages by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages for each violation in the maximum amount allowed by law, as well as reasonable attorneys' fees for an amount in excess of $25,000.00.

**THIRD CAUSE OF ACTION**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C.G.S. § 75-1.1, *et seq.***
**(on behalf of all classes)**

122.    All paragraphs of this Amended Complaint are incorporated herein as if fully restated.

123.    At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

124.    The conduct of Defendants as set forth herein is against the established public policy of the State of North Carolina; is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

125.    Defendants' violations of the UDTPA include, but are not limited to, (a) assessing and attempting to collect Eviction Fees when such amounts were not owed; (b) assessing and attempting to collect Eviction Fees when such amounts are expressly prohibited

23

by N.C.G.S. § 42-46; (c) assessing and attempting to collect Eviction Fees prior to filing or serving a complaint in summary ejectment; (d) assessing and attempting to collect Eviction Fees prior to being awarded any such amounts by a North Carolina judge; (e) assessing and attempting to collect Eviction Fees after dismissing complaints in summary ejectments without prejudice; (f) failing to refund any portion of the Eviction Fees when a North Carolina magistrate judge orders costs to be assessed against Defendants; (g) misrepresenting the character, amount, or legal status of the obligation alleged to be owed by Plaintiff and each member of the class; (h) employing a system, policies, and procedures for the collection of debt which is unfair, deceptive, and misleading, and not permitted by both the public policy of North Carolina and the express statutory provisions of N.C.G.S. § 42-46; (i) utilizing false representations and deceptive measures to collect or attempt to collect Eviction Fees which are unlawful; (j) undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiff; and (k) employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods with the explicit knowledge that such conduct was in violation of applicable North Carolina law.

126.    The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiff and each member of the Class.

127.    Plaintiff and members of the Class suffered actual injury as a result of Defendants' unfair actions. Such injury consists of, but is not limited to emotional distress damages and money damages resulting from Defendants' demanding and obtaining fees and costs in excess of amounts allowed pursuant to North Carolina law from Plaintiff and each member of the Class.

128.    Defendants' actions were in or affecting commerce and constitute unfair and

deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

129.     Plaintiff and each member of the Class have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

**FOURTH CAUSE OF ACTION**
**Petition for Declaratory Judgment N.C.G.S. § 1-253, *et seq.***
**(on behalf of all classes)**

130.     All paragraphs of this Amended Complaint are incorporated herein as if fully restated.

131.     Wallace and the members of the Classes file this Petition for a Declaratory Judgment under N.C.G.S. Chapter 1, Article 25, and the Court has jurisdiction of this matter under such statute.

132.     Wallace and the members of the Classes have an actual controversy with Defendants regarding the validity and enforceability of a portion of the Lease.

133.     The Lease states that"[i]n the event we file a summary ejectment lawsuit against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs..." and immediately identified and described the three fees identified in N.C.G.S. § 42-46 (e) through (g): Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee. Upon information and belief, every lease during the Relevant Time Period, including Wallace's Lease, contains this same provision.

134.     However, N.C.G.S. § 42-46(h)(3) stated (prior to the enactment of the Act) that "[i]t is contrary to public policy for a landlord to put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by

25

law."

135.    The Eviction Fees, described as "any applicable court costs" in the Lease, constitute a "fee for filing a complaint for summary ejectment" and is separate from and in addition to "the ones expressly authorized by subsections (e) through (g)."

136.    Under N.C.G.S. § 42-46(h)(4), "[a]ny provision of a residential rental agreement contrary to the provisions of this section is against the public policy of this State and therefore void and unenforceable." Therefore, because Defendants' lease contains a provision that is void and unenforceable, Plaintiff and the members of the classes seek an order declaring the Defendants' North Carolina leases to be void and unenforceable insofar as such leases provide for a fee other than the ones expressly authorized by N.C.G.S. § 42-46 (e) through (g).

137.    Wallace and the members of the Classes have an actual controversy with Defendants resulting from Defendants' erroneous interpretation of the applicable law.

138.    In a February 16, 2018 email to Wallace, Defendants claimed that "[t]he cost of eviction is the responsibility of the tenant per NC tenant law 42-33." See attached **Exhibit 9**. Upon information and belief, Defendants were referring to N.C.G.S. § 42-33.

139.     It is established law in North Carolina that N.G.S.S. § 42-33 is "remedial in nature and will apply only where the parties' lease does not cover the issue of forfeiture of the lease term upon nonpayment of rent. Where the contracting parties have considered the issue, negotiated a response, and memorialized their response within the lease, the trial court appropriately should decline to apply these statutory provisions." *Charlotte Office Tower Associates v. Carolina SNS Corp.*, 89 N.C. App. 697, 701 (N.C. App. 1998).

140.    Defendants entered into written leases that cover the issue of forfeiture of the lease term upon nonpayment of rent with Plaintiff and members of the classes.

141.     Therefore, because the parties have considered the issue, negotiated a response, and memorialized the response within a written lease, Plaintiff and the members of the classes seek an order declaring that N.C.G.S. § 42-33 is not applicable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff; and members of the proposed Classes respectfully request that this Court:

1.     Assume jurisdiction over this action;

2.     Certify the Classes and appointing Plaintiff and her counsel to represent the classes;

3.     Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiff and each member of the Proposed Class pursuant to N.C.G.S. § 75-54, or in the alternative N.C.G.S. § 75-1.1;

4.     Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiff and each member of the Proposed Class pursuant to N.C.G.S. § 75-55, or in the alternative N.C.G.S. § 75-1.1;

5.     Issue a declaratory judgment that Defendants' Standard Lease and any substantially similar residential lease agreement used by Defendants is contrary to N.C.G.S. § 42-46 and therefore void and unenforceable as against public policy;

6.     Issue a declaratory judgment that N.C.G.S. § 42-33 is inapplicable in every instance in which Defendants entered into a written lease agreement that addresses forfeiture of the lease term upon the tenant's nonpayment of rent with Plaintiffs and the members of the classes;

7.     Award Plaintiff and each member of the Proposed Class compensatory damages in an amount to be determined at trial;

27

8.     Award Plaintiff and each member of the Proposed Class punitive damages amount to be determined at trial;

9.     Award Plaintiff and each class member a statutory penalty in the amount of no more than $4,000 for each violation of N.C.G.S. § 75-50 *et seq*.;

10.    Award Plaintiff and each class member damages calculated pursuant to N.C.G.S. § 75-8 for each week that Defendants' illegal conduct occurred;

11.    Award Plaintiff all statutory and actual damages to which she is entitled separate and apart from the Proposed Class in an amount in excess of $25,000.00;

12.    Treble all damages resulting from a violation of N.C.G.S. § 42-46 in accordance with N.C.G.S. § 75-1.1;

13.    Award attorneys' fees to Plaintiff and members of the Proposed Class pursuant to N.C.G.S. § 75-16.1;

14.    Tax the costs of this action to Defendants, or any of them;

15.    Allow a trial by jury on all issues so triable; and

16.    Grant Plaintiff and the members of the Proposed Class such other and further relief as the Court deems just and proper.


This the 24th day of August, 2018.


                                        WHITFIELD BRYSON & MASON  LLP

                                        */s/ Scott C. Harris*
                                        Scott C. Harris
                                        N.C. Bar No.: 35328
                                        Patrick M. Wallace
                                        N.C Bar No.: 48138
                                        900 W. Morgan Street
                                        Raleigh, North Carolina 27603

28

Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@wbmllp.com
pat@wbmllp.com

MAGINNIS LAW, PLLC
Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com

*Attorneys for Katrina Wallace and the putative classes*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This the 24th day of August, 2018.

*/s/ Scott C. Harris*
Scott C. Harris
Whitfield Bryson & Mason LLP