# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KATRINA WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV501 |
| | ) | |
| GREYSTAR REAL ESTATE PARTNERS, | ) | |
| LLC; GREYSTAR GP II, LLC; GREYSTAR | ) | |
| MANAGEMENT SERVICES, L.P.; | ) | |
| GREYSTAR RS NATIONAL, INC.; | ) | |
| GREYSTAR RS SE LLC; GREP SOUTHEAST, | ) | |
| LLC; and INNESBROOK APARTMENTS, | ) | |
| LLC d/b/a SOUTHPOINT GLEN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this putative class action alleging violations of the North Carolina Residential Rental Agreements Act, N.C. Gen. Stat. § 42-38 *et seq.*, the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 *et seq.*, and the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1 *et seq.*[1] (ECF No. 32.)  Before the Court are three motions to dismiss: (a) Innesbrook Apartments, LLC's ("Innesbrook") motion to dismiss, (ECF No. 38); (b) GREP Southeast, LLC's ("GREP") motion to dismiss, (ECF No. 49); and, (c) filing together, Greystar Real Estate Partners, LLC ("Greystar Real Estate"), Greystar Management Services, L.P. ("Greystar Management"),

---

[1] Plaintiff also requests a declaratory judgment stating that Defendants' practices violate N.C. Gen. Stat. § 42-46.  (ECF No. 32 ¶¶ 130–141.)

Greystar RS National, Inc. ("Greystar National"), and Greystar RS SE, LLC's ("Greystar SE") (collectively, "Greystar Defendants"), motion to dismiss, (ECF No. 40).[2] Plaintiff has also filed a Motion for Jurisdictional Discovery. (ECF No. 57.) For the reasons stated below, the Court denies Innesbrook's and GREP's motions to dismiss; denies in part the Greystar Defendants' motion to dismiss; and grants Plaintiff's Motion for Jurisdictional Discovery.

## I. BACKGROUND

Plaintiff leased an apartment at Southpoint Glen Apartments, the trade name for Innesbrook, for a period from April 23, 2017 through June 21, 2018. (ECF No. 32 ¶¶ 18, 55.)[3] Plaintiff had to undergo unexpected brain surgery in November 2017, after which she was unable to return to work. (*See id.* ¶¶ 59–61.) By February 2018, Plaintiff had exhausted her savings and was unable to pay her February rental payment. (*Id.* ¶ 63.) On February 6, Plaintiff was charged $43.55 as a late fee. (*Id.* ¶ 64.) On February 13, Plaintiff received an email from a Southpoint Glen Assistant Community Manager instructing her that "all unpaid accounts have now been filed on for possession" and that an additional $201 "filing fee" charge would be required "[t]o dismiss the eviction filing." (ECF No. 32-8.) On February 16, a charge of $201.00, titled "Legal Fees" (the "Eviction Fees"), was placed on Plaintiff's account ledger. (ECF No. 32-5 at 3.) On February 21, a Complaint in Summary Ejectment was filed in Durham County District Court, seeking possession of the premises only and "omit[ting]

---

[2] For reasons that are unclear to the Court, all Defendants except for Greystar GP II, LLC have filed motions to dismiss. (ECF Nos. 38, 40, 49.) Neither party acknowledges this omission or provides any reasons why this defendant was not included in Defendants' various motions to dismiss.

[3] Plaintiff filed an Amended Complaint on August 24, 2018, which is the operative complaint in this matter. (ECF No. 32.)

any claim for rents or damages." (ECF No. 32-10 at 2.) That same day, before Defendants had obtained service on Plaintiffs for the summary ejectment action, Plaintiff paid the full balance on her account ledger. (ECF No. 32-5 at 3; ECF No. 32-10 at 5 (serving Plaintiff on February 22).) Defendants dismissed the ejectment action without prejudice a few days later. (ECF No. 32-10 at 1.)

Plaintiff filed this action in Durham County Superior Court, and Defendants removed this action to this Court on June 13, 2018 pursuant to 28 U.S.C. §§ 1332, 1441, 1446. (ECF Nos. 1, 9.) Defendants Innesbrook and GREP filed nearly identical motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 38, 49.) Greystar Defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6), arguing that this Court does not have personal jurisdiction over them and that Plaintiff has failed to state a claim. (ECF No. 40.) Because personal jurisdiction is a threshold issue which must be decided before turning to the merits of the case, *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006), the Court will first address Greystar Defendants' arguments pursuant to Rule 12(b)(2).

## II.     RULE 12(b)(2)—PERSONAL JURISDICTION

### A.  Standard of Review

On a personal jurisdiction challenge, the plaintiff bears the burden of ultimately proving personal jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When, however, as here, the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing—relying instead on the motion papers, supporting legal memoranda, and allegations

in the complaint[4]—the plaintiff need only make a prima facie showing of personal jurisdiction. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Carefirst of Md.*, 334 F.3d at 396. "[A] plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant." *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014) (citing *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003)). However, a threshold prima facie finding of jurisdiction does not settle the issue, as the plaintiff "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

When considering whether the plaintiff has made a prima facie showing of jurisdiction, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather,* 773 F.3d at 558 (quoting *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989)); *see also Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018) ("[W]hen the parties have not yet had a fair opportunity to develop and present the relevant jurisdictional evidence, we have treated the disposition of Rule 12(b)(2) motions to dismiss for a lack of personal jurisdiction in conceptually the same manner as we treat the disposition of motions to dismiss under Rule 12(b)(6)."). "Once a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come

---

[4] "The Court may also consider supporting affidavits." *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 538 n.2 (M.D.N.C. 2015).

forward with affidavits or other evidence in support of its position." *Pathfinder Software*, 127 F. Supp. 3d at 538 (quoting *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013)). When both sides present evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made. *Id.*

### B. Discussion

Greystar Defendants argue that this Court lacks personal jurisdiction over them. (ECF No. 41 at 7.) Greystar Defendants introduced evidence, in the form of a declaration, that Innesbrook owns Southpoint Glen Apartments and GREP manages Southpoint Glen Apartments. (ECF No. 41-1 ¶ 7.) Greystar Defendants argue, then, that none of them have "ever performed property management services at Innesbrook." (*Id.* ¶ 6.) Plaintiff argues in response that this Court has specific personal jurisdiction over Greystar Defendants, or, in the alternative, has jurisdiction under a partnership or alter ego theory. (ECF No. 56 at 10–21.) Plaintiff also moves for jurisdictional discovery, "should the Court determine that there is not sufficient evidence in the record" to exercise personal jurisdiction over each Greystar Defendant. (ECF No. 58 at 1–2.)

A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather*, 773 F.3d at 558. North Carolina's long-arm statute "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." *Id.* (citing N.C. Gen. Stat. § 1–

75.4(1)(d); *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977)). The two-prong test therefore "merges into [a] single question" when North Carolina is the forum state, allowing the court to proceed directly to the constitutional analysis. *See Universal Leather*, 773 F.3d at 558–59; *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant: general or specific personal jurisdiction. *Universal Leather*, 773 F.3d at 559. "General personal jurisdiction requires 'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Plaintiff does not attempt to argue that Greystar Defendants had such contacts with North Carolina and does not assert that this Court has general personal jurisdiction over Greystar Defendants.[5] (ECF No. 56 at 10.) Instead, Plaintiff claims that this Court has specific personal jurisdiction over Greystar Defendants arising from Greystar Defendants' actions in North Carolina. (ECF No. 56 at 10.)

For specific personal jurisdiction, the defendant must have "purposefully established minimum contacts in the forum State" such "that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted). Courts use a three-prong test to evaluate specific personal jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those

---

[5] "Each of the Greystar Defendants is a Delaware entity, with its principal place of business in South Carolina." (ECF No. 41-1 ¶ 4.)

activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods,* 814 F.3d at 189 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

The first prong, purposeful availment, requires the district court to evaluate whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Universal Leather*, 773 F.3d at 559 (alteration in original) (quoting *Fed. Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 658 (4th Cir. 1989)). This analysis is "flexible" and involves a case-by-case consideration of several factors. *Id.* at 560 (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). Courts have generally considered the following nonexclusive factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Entm't*, 911 F.3d at 198–99 (citing *Consulting Eng'rs*, 561 F.3d at 278). The relationship among the defendant, the forum state, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum [state]." *Walden v. Fiore,* 571 U.S. 277, 284 (2014) (quoting *Burger King,* 471 U.S. at 475).

The second prong of the specific personal jurisdiction test "requires that [Greystar Defendants'] contacts [with the forum state] form the basis for the suit." *Manley v. Air Can.,*

753 F. Supp. 2d 551, 559 (E.D.N.C. 2010). The analysis for this prong is "generally not complicated. Where activity in the forum state is the 'genesis of [the] dispute,' this prong is easily satisfied." *Tire Eng'g*, 682 F.3d at 303 (alteration in original) (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009)).

The third prong requires the exercise of personal jurisdiction to be constitutionally reasonable. *Perdue Foods*, 814 F.3d at 189. This prong allows the Court to consider factors regarding the appropriateness and fairness of the forum, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279 (citing *Burger King*, 471 U.S. at 477).

The Court will address each Greystar Defendant to determine whether Plaintiff has made a prima facie showing of personal jurisdiction and, if Plaintiff has not made such a showing, whether Plaintiff should be allowed jurisdictional discovery on such issues.

### 1. *Greystar Real Estate Partners, LLC*

Most of Greystar Real Estate's contacts with North Carolina and this case stem from its operation of the Greystar website, greystar.com. (*See* ECF No. 32 ¶ 23(f)–(g).) Personal jurisdiction arising out of contacts established over the internet is evaluated using factors first stated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), and adopted by the Fourth Circuit in *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002). This test recognizes a "sliding scale" for when electronic contacts with a particular jurisdiction are significant:

> At one end of the spectrum are situations where a defendant
> clearly does business over the Internet. If the defendant enters
> into contracts with residents of a foreign jurisdiction that involve
> the knowing and repeated transmission of computer files over
> the Internet, personal jurisdiction is proper. At the opposite end
> are situations where a defendant has simply posted information
> on an Internet Web site which is accessible to users in foreign
> jurisdictions. A passive Web site that does little more than make
> information available to those who are interested in it is not
> grounds for the exercise [of] personal jurisdiction. The middle
> ground is occupied by interactive Web sites where a user can
> exchange information with the host computer. In these cases,
> the exercise of jurisdiction is determined by examining the level
> of interactivity and commercial nature of the exchange of
> information that occurs on the Web site.

*ALS Scan*, 293 F.3d at 713–14 (alteration in original) (quoting *Zippo Mfg. Co.*, 952 F. Supp. at

1124). To determine whether a website has sufficiently targeted a particular forum to create

personal jurisdiction in that forum, Courts look to whether the website "(1) directs electronic

activity into the State, (2) with the manifested intent of engaging in business or other

interactions within the State, and (3) that activity creates, in a person within the State, a

potential cause of action cognizable in the State's courts." *Id.* at 714; *see also Carefirst of Md.,*

334 F.3d at 399–401 (applying the *Zippo* factors).

On Greystar's website, a visitor can search for apartments located in North Carolina

that are "Greystar Communit[ies]." (ECF No. 56-1 ¶ 16; ECF No. 56-2 ¶ 3.) Greystar's

website identifies "approximately 116 'Greystar' properties in North Carolina," and the

website makes "no delineation between properties that Greystar owns and properties that

Greystar manages." (ECF No. 56-1 ¶¶ 20–21.) Plaintiff initially found Southpoint Glen

through an internet search which directed her to Southpoint Glen Apartments' website. (*See*

ECF No. 56-2 ¶¶ 2, 4.) Through that website, she applied for an apartment and paid the

application fee.  (*Id.* ¶ 5.)  During her tenancy at Southpoint Glen, Plaintiff was encouraged to use the Greystar website to "view rental documents and [her] account ledger, communicate with Greystar, make maintenance requests, and pay [her] rent."  (*Id.* ¶ 16.)  Every email she received from the property management team at Southpoint Glen identified the apartments as "Proudly Managed by Greystar®" and included a hyperlink to greystar.com.  (*Id.* ¶ 6.)  Greystar's website also identifies two corporate offices located in Charlotte and Raleigh, North Carolina, that offer "fully-integrated real estate services including property management, investment management, as well as development and construction services."  (ECF No. 56-1 ¶ 15.)

Greystar Defendants argue in response that greystar.com is "directed toward a global audience[ ] and not expressly aimed at the forum state."  (ECF No. 65 at 3–4 (internal citation and quotation omitted).)  Greystar's website lists properties located in the United States, Latin America, and Europe.  (*Id.* at 4.)  Further, Greystar Real Estate does not provide any property management services to any property in North Carolina, and it is not registered to do business in North Carolina.  (ECF No. 41-1 ¶ 9(a), (d).)

Greystar's website is best categorized as "semi-interactive" under the *Zippo* framework, because it does not appear to allow visitors to "enter[ ] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet."  *See ALS Scan*, 293 F.3d at 713.  It does, however, "direct[ ] electronic activity into the State," *see id.* at 714, by listing over 100 apartments in North Carolina and encouraging visitors to apply for a lease, and pay the accompanying application fee, online.  (ECF No. 56-1 ¶¶ 18, 20; ECF No. 56-2 ¶ 5.)  Southpoint Glen's management staff, now known to be

managed by GREP, a subsidiary of Greystar Real Estate, further encouraged Plaintiff to continue to engage with the Greystar website by paying her rent online, among other services. (ECF No. 56-2 ¶ 16.)  Because Plaintiff's claims in this matter arise out of her lease and her failure to pay rent on time, Greystar's website's contacts with the forum state gave rise to Plaintiff's "cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. Greystar has not argued that jurisdiction would be otherwise constitutionally inappropriate in this case.  *See Consulting Eng'rs*, 561 F.3d at 279.  This Court therefore concludes that it has specific personal jurisdiction over Greystar Real Estate in this matter.

### 2.  *Greystar Management Services, L.P., Greystar RS National, Inc. and Greystar RS SE, LLC*

The three remaining Greystar Defendants have contacts with North Carolina that are similar in nature.  Susan Newman, who issued a declaration on behalf of Greystar Defendants, works for Greystar Management and, in her position as Managing Director of Real Estate Services for the Carolinas, "oversee[s] property management services provided to 108 properties in North Carolina, including Innesbrook Apartments."  (ECF No. 41-1 ¶¶ 1–2.) The three remaining Greystar Defendants are each Delaware entities, with their principal places of business in the same office in Charleston, South Carolina.  (*Id.* ¶ 4; ECF No. 56-1 ¶ 7.)  Although Ms. Newman states that "[n]one of the Greystar Defendants has ever performed property management services at Innesbrook Apartments," the entity which does provide management services, GREP, is a "wholly-owned subsidiary of Greystar Management."  (ECF No. 41-1 ¶¶ 6, 8.)  Further, each of the three remaining Greystar Defendants have a registered agent and a registered office in North Carolina.  (ECF No. 56-1 ¶ 6.)

The contacts by the three remaining Greystar Defendants addressed above, however, are not sufficient to show that they "purposefully availed" themselves "of the privilege of conducting activities in the State." *Perdue Foods*, 814 F.3d at 189. Of the eight factors for purposeful availment, arguably only two are met by Greystar Management and one by Greystar National and Greystar SE: (1) maintaining an agent and office in the state, met by all three remaining Greystar Defendants, (ECF No. 56-1 ¶ 6); and (2) engaging in "significant or long-term business activities in the State" by overseeing the management of 108 properties in North Carolina, met by Greystar Management, (ECF No. 41-1 ¶ 2). *See Sneha Media & Entm't*, 911 F.3d at 198–99 (listing personal availment factors). Further, it does not appear that any of those contacts gave rise to Plaintiff's cause of action regarding the allegedly unlawful Eviction Fees. *See Perdue Foods,* 814 F.3d at 189. Therefore, this Court concludes that Plaintiff has not made a prima facie showing of specific personal jurisdiction for Greystar Management, Greystar National, and Greystar SE.

Plaintiff has, however, filed a motion for jurisdictional discovery. (ECF No. 57.) "When plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous." *Silvestro v. EBI*, No. 5:15-CV-509-BO, 2016 U.S. Dist. LEXIS 50993, at *3 (E.D.N.C. Apr. 14, 2016) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)); *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1236 (Fed. Cir. 2010) (concluding that the district court abused its discretion in denying the plaintiff jurisdictional discovery); *McLaughlin v. McPhail*, 707 F.2d 800, 806–07 (4th

Cir. 1983) (noting that limited discovery "may be warranted to explore jurisdictional facts in some cases").

Plaintiff's claims against the three remaining Greystar Defendants are not "clearly frivolous." Defendants' complex corporate structure and practice of using the term "Greystar" to refer to multiple different entities make it difficult for an outsider, like Plaintiff, to determine which Greystar subsidiary is responsible for which actions. (*See, e.g.*, ECF No. 5 at 2; ECF No. 56-1 ¶ 13.) It is possible that Greystar Management's role of "oversee[ing] property management services" in North Carolina could support the exercise of personal jurisdiction in this matter. (ECF No. 41-1 ¶ 2.) Further, there is no indication which Greystar entity controls or operates the offices in Charlotte and Raleigh that provide "fully-integrated real estate services," as referenced on Greystar's website. (ECF No. 56-1 ¶ 15.) Therefore, because Plaintiff's claims against Greystar Management, Greystar National, and Greystar SE are not "clearly frivolous," jurisdictional discovery is appropriate. Plaintiff requests twenty-five interrogatories and requests for production, "the deposition of a corporate designee for each such entity who is knowledgeable on the subjects identified above," and the deposition of Mary Bunt, a Senior Director of Technology Services who provided a declaration in connection with Defendants' removal of this case to federal court, (ECF No. 1-3). (ECF No. 58 at 5.) Plaintiff's requested limited jurisdictional discovery shall be granted for the three remaining Greystar Defendants, to be completed within 90 days of the date of the entry of this Court's order.

## III.    RULE 12(b)(6)—STATUTORY INTERPRETATION

Innesbrook, GREP, and the Greystar Defendants each move to dismiss pursuant to Rule 12 (b)(6) with nearly identical arguments.[6] (ECF Nos. 39, 41, 50.) Defendants argue that the Eviction Fees that Defendants placed on Plaintiff's ledger on February 16, 2018, were not barred by North Carolina law.[7] (ECF No. 50 at 3-4.) Defendants also argue that the amendments to N.C. Gen. Stat. § 42-46 (the "2018 Amendment"), which became law on June 25, 2018 and explicitly authorized such Eviction Fees, should be retroactively applied to the events alleged in the Complaint. (*Id.* at 12; ECF No. 32-12 at 2.) Plaintiff argues in response that § 42-46 barred such fees from being charged, and that the 2018 Amendment should not be retroactively applied. (ECF No. 61 at 6, 13–17.)

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standards of Rule 8. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[6] For ease of reference, the Court will cite to GREP's brief supporting its motion to dismiss to refer to Defendants' arguments, as it appears to be the most comprehensive of the three briefs.

[7] Because this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, this Court applies state substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938); *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002).

"A district court should dismiss a complaint pursuant to Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Vitol, S.A. v. Primrose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the complaint alleges facts sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

While a court's evaluation of a Rule 12(b)(6) motion to dismiss is "generally limited to a review of the allegations of the complaint itself," a court may properly consider documents "attached to a complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Therefore, in addition to considering the Complaint, the Court will also consider the exhibits attached to the Complaint. *See id.*

**B. Discussion**

*1. Legality of Eviction Fees Before the 2018 Amendment*

The version of N.C. Gen. Stat. § 42-46 which was in effect at the time of Defendants' conduct in this matter was entitled "Authorized Fees." N.C. Gen. Stat. § 42-46 (2009).[8]

---

[8] Before 2018, § 42-46 was last amended in 2009. 2009 N.C. Sess. Laws 279, § 4.

Section 42-46 authorized a landlord to charge a "late fee," capped at 5% of the tenant's monthly rent, if the tenant was more than five days late in making a rental payment. *Id.* § 42-46(a). Section 42-46 also authorized three other "[a]uthorized fees": "a complaint-filing fee not to exceed fifteen dollars . . . or five percent . . . of the monthly rent, whichever is greater," *id.* § 42-46(e); "a court-appearance fee in an amount equal to ten percent . . . of the monthly rent," *id.* § 42-46(f); and "a second trial fee for a new trial following an appeal from the judgment of a magistrate . . . not [to] exceed twelve percent . . . of the monthly rent," *id.* § 42-46(g). The statute then specified that a landlord is "entitled to charge and retain only one of the above fees for the landlord's complaint for summary ejectment and/or money owed." *Id.* § 42-46(h)(1). Section 42-46 also restricted landlords' ability to charge other fees, stating:

> It is contrary to public policy for a landlord to put in a lease or claim *any fee* for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law.

*Id.* § 42-46(h)(3) (emphasis added). Section 42-46 concluded by declaring, "[a]ny provision of a residential rental agreement contrary to the provisions of this section is against the public policy of this State and therefore void and unenforceable." *Id.* § 42-46(h)(4).

Defendants argue that § 42-46(h)(3)'s prohibition against "any fee . . . other than the ones expressly authorized" therein does not apply to the Eviction Fees charged in this case. They argue that § 42-46 only regulated "administrative fees," and that "out-of-pocket costs," such as the filing fee, service cost, and attorney's fee that comprised the Eviction Fees in this case, are not covered by § 42-46. (ECF No. 50 at 6–12.) Plaintiff argues in response that this interpretation contradicts the "clear and unambiguous" language of § 42-46. (ECF No. 61 at

6, (quoting *Begley v. Emp't Sec. Comm'n*, 274 S.E.2d 370, 373 (N.C. Ct. App. 1981)).) This Court agrees with Plaintiff.

The primary goal of statutory interpretation is to give effect to legislative intent. *Purcell v. Friday Staffing*, 761 S.E.2d 694, 698 (N.C. Ct. App. 2014). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning. When, however, a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *State v. Beck*, 614 S.E.2d 274, 277 (N.C. 2005) (internal citations and quotation marks omitted). A statute is considered ambiguous if its language is "fairly susceptible of two or more meanings." *State v. Sherrod*, 663 S.E.2d 470, 472 (N.C. Ct. App. 2008).

Defendants' arguments in support of their interpretation rely on the history of § 42-46 and a close reading of the statutory text. (*See* ECF No. 50 at 4–7.) Defendants first point to *Friday v. United Dominion Realty Trust, Inc.*, the only North Carolina appellate case that analyzed § 42-46. 575 S.E.2d 532 (N.C. Ct. App. 2003). *Friday,* however, analyzed an older version of § 42-46 that did not regulate administrative fees or court costs, instead only regulating late fees, found in subsection (a) of the modern statute. *Friday*, 575 S.E.2d at 535; N.C. Gen. Stat. § 42-46(a). The court in *Friday* addressed the "administrative fee[s]" charged by the landlord as distinct from the "court costs" also awarded by the magistrate as part of the defendant's ejectment actions against the plaintiff. *Friday*, 575 S.E.2d at 537–38. Defendants argue that when the North Carolina General Assembly amended § 42-46 approximately six years later in 2009, they only intended to regulate "administrative fees" and not "court costs," as defined in *Friday*. (ECF No. 50 at 6 (quoting *Blackmon v. N.C. Dep't of Corr.*, 470 S.E.2d 8, 11 (N.C. 1996)

("In determining legislative intent, we may assume that the legislature is aware of any judicial construction of a statute.") (internal quotations omitted)).)

Defendants' interpretation of § 42-46 fails in multiple respects. First, Defendants' interpretation of "court costs," as discussed in *Friday*, does not correlate to the allegedly unlawful Eviction Fees in this case. In *Friday*, the "court costs" were awarded by a magistrate in conjunction with a successful action for summary ejectment. 575 S.E.2d at 537–38 ("The $45 is a court cost to be imposed by the trial court."). In contrast, the Eviction Fees were placed on Plaintiff's account ledger on February 16, 2018 before Defendants had even filed a complaint in summary ejectment on February 21, 2018. (ECF No. 32-10 at 2; ECF No. 32-5 at 3.) Therefore, the Eviction Fees that Defendants charged Plaintiff are not analogous to the "court costs" described in *Friday*.

Second, Defendants' argument that § 42-46 did not attempt to regulate "out-of-pocket expenses" ignores the full text of the statute. Section 42-46(h)(3) prohibits "any fee[s] . . . other than the one expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law." N.C. Gen. Stat. § 42-46(h)(3) (2009). An attorney's fee was one of the "out-of-pocket expenses" charged by Defendants in this matter. (ECF No. 32 ¶ 33.) If § 42-46's prohibition on "any fee" other than those expressly authorized did not include "out-of-pocket expenses," as Defendants argue, then § 42-46 would not have needed to authorize a "reasonable attorney's fee as allowed by law." Therefore, the simplest

and most logical conclusion is, to quote Plaintiff's argument, "'any fee' means 'any fee,'" (ECF No. 61 at 7), including fees associated with Defendants' out-of-pocket expenses.[9]

Because the language of § 42-46 is "clear and unambiguous," this Court will "giv[e] the words their plain and definite meaning." *Beck*, 614 S.E.2d at 277. The "plain and definite meaning" of the term "any fee," as used in § 42-46, includes the Eviction Fees allegedly charged to Plaintiff. *See* N.C. Gen. Stat. § 42-46(h)(3) (2009). Therefore, Defendants have failed to show that § 42-46, as it existed in February 2018, would have allowed Defendants to charge the Eviction Fees on February 16, 2018.

### 2. *Effect of the 2018 Amendment*

On April 12, 2018, the Wake County Superior Court entered an order in the case of *Hargrove v. Grubb Management, Inc.*, an unrelated case involving claims similar to those at issue in this matter. *Hargrove v. Grubb Mgmt., Inc.*, No. 17-CVS-7995 (N.C. Super. Ct. April 12, 2018); (ECF No. 50-15). In that order, the court found that a landlord violated § 42-46 by imposing and collecting from the plaintiff-tenant a fee of $191, as reimbursement from filing fees, attorney fees, and other court costs. (ECF No. 50-15 at 2–3.) Approximately two months later, the North Carolina General Assembly passed Senate Bill 224, which expressly permits a landlord to charge a tenant for filing fees, costs of service, and reasonable attorney's fees "not to exceed fifteen percent . . . of the amount owed by the tenant." 2018 N.C. Sess. Laws 50 § 1.1(b); (ECF No. 50-17).

---

[9] Defendants' other arguments regarding the Tenant Security Deposit Act and the difference between "earn" and "reimburse" are similarly not persuasive. (*See* ECF No. 50 at 7–8.)

Plaintiff does not attempt to argue that the Eviction Fees would still be considered unlawful under the 2018 Amendment.  (*See* ECF No. 61 at 12.)  Instead, Plaintiff argues that the 2018 Amendment substantively changed the law and should therefore only have a prospective effect.  (*Id.* at 13–17.)  Defendants argue that the 2018 Amendment only clarified § 42-46 and should therefore apply retroactively.  (ECF No. 50 at 13–16.)

When a court addresses the applicability of an amendment, the court must determine whether "the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it."  *Childers v. Parker's, Inc.*, 162 S.E.2d 481, 483 (N.C. 1968).  Such a determination, however, "requires a careful comparison of the original and amended statutes."  *Ferrell v. Dep't of Transp.*, 435 S.E.2d 309, 315 (N.C. 1993).  If the original statute is unambiguous, courts typically presume "that the legislature intended to change the original act by creating a new right or withdrawing any existing one."  *Childers*, 162 S.E.2d at 483–84 (internal quotation marks omitted); *see also Ferrell*, 435 S.E.2d at 315; *State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C.*, 299 S.E.2d 425, 429 (N.C. 1983).  If the original statute is ambiguous, however, then "no such inference arises."  *Ferrell*, 435 S.E.2d at 315.  Also, if a statute does not "expressly . . . address a particular point" and then addresses it in an amendment, "the amendment is more likely to be clarifying than altering."  *Ray v. N.C. Dep't of Transp.*, 727 S.E.2d 675, 682 (N.C. 2012) (quoting *Ferrell*, 435 S.E.2d at 315).

As a preliminary matter, because this Court has found the original version of § 42-46 unambiguous, the presumption is therefore that the 2018 Amendment was altering, not clarifying.  *See Ferrell*, 435 S.E.2d at 315.  Also, the title of the amendment, "An Act To *Allow* Landlords To Recover Out-Of-Pocket Expenses In Summary Ejectment Cases,"

demonstrates an intent to create new rights, not reaffirm existing ones. 2018 N.C. Sess. Laws 50 (emphasis added); *see State ex rel. Cobey v. Simpson*, 423 S.E.2d 759, 763-64 (N.C. 1992) (using the title of an amendment to determine whether the amendment was clarifying or altering).

Defendants argue that because the original statute did not "expressly . . . address" whether out-of-pocket expenses were allowed, and the amended statute did expressly allow those charges, then the 2018 Amendment should be considered clarifying. *See Ray*, 727 S.E.2d at 682; (ECF No. 50 at 15). The original version of § 42-46, however, did regulate some out-of-pocket expenses incurred by landlords. *See* N.C. Gen. Stat. § 42-46 (2009). The original statute allowed landlords to collect "reasonable attorney's fee as allowed by law," in addition to the other authorized fees. *See id.* The law that would have allowed landlords to collect attorneys' fees was N.C. Gen. Stat. § 6-21.2. That section allows debt holders to collect attorneys' fees, up to 15% of the "outstanding balance" on the debt, when enforcing the note. § 6-21.2(2). Under § 6-21.2, debt holders also have to give the debtor five days to cure the default before charging an attorney's fee. § 6-21.2(5). The 2018 Amendment allows a landlord to charge an attorney's fee without requiring the same five-day notice period. N.C. Gen. Stat. § 42-46(i)(3) (2018). The Amendment also now allows a landlord to recover an attorney's fee of 15% of the monthly rent for a non-monetary default, which was not possible under § 6-21.2. *Id.*; *see* § 6-21.2. Therefore, this Court concludes that because the 2018 Amendment altered a right to attorneys' fees that was "expressly . . . address[ed]" in the original statute, the 2018 Amendment should be considered altering. *See Ray*, 727 S.E.2d at 682.

The 2018 Amendment also altered landlords' ability to collect filing fees from their tenants. Prior to the 2018 Amendment, filing fees were not a recoverable cost in civil actions.

N.C. Gen. Stat. § 7A-305(d) (providing a "complete and exclusive" list of recoverable fees in civil litigation); *see Oakes v. Wooten*, 620 S.E.2d 39, 48 (N.C. Ct. App. 2005). Now, landlords may charge the out-of-pocket cost of filing a summary ejectment action. N.C. Gen. Stat. § 42-46(i) (2018). This change, along with the changes to attorneys' fees, has "creat[ed] . . . new right[s]" for landlords, leading to a presumption that the legislature intended to alter, not clarify, the statute. *See Childers*, 162 S.E.2d at 483.

Because the 2018 Amendment altered the rights of landlords in pursuing summary ejectment actions, it should only be applied prospectively. *See Ray*, 727 S.E.2d at 681. Further, the 2018 Amendment was enacted after the Eviction Fees were charged in this case, thus Defendants' actions are properly addressed pursuant to the 2009 version of § 42-46. *See* 2018 N.C. Sess. Laws 50. Accordingly, Plaintiff has stated a plausible cause of action for violations the North Carolina Residential Rental Agreements Act, the NCDCA, and the NCUDTPA.[10]

## IV. CONCLUSION

Based on the preceding discussion the Court concludes as follows: that Defendant Innesbrook's and Defendant GREP's motions to dismiss pursuant to Rule 12(b)(6), (ECF Nos. 38, 49), are denied because the 2009 version of § 42-46 bars the charging of the Eviction Fees and the 2018 Amendment did not retroactively permit such charges; that Greystar Defendants' motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6), (ECF No. 40), is denied in part and stayed in part. Greystar Defendants' motion is denied as it relates to Greystar Real Estate, and the motion is stayed as it relates to Greystar Management, Greystar

---

[10] Innesbrook's arguments regarding the NCDCA and NCUDTPA are based on their arguments that Defendants' conduct did not violate § 42-46. (*See* ECF No. 39 at 16–19.) Because Plaintiff stated a plausible claim for violations of § 42-46, Plaintiff's NCDCA and NCUDTPA claims also stand.

National, and Greystar Southeast pending jurisdictional discovery. Plaintiff's motion for jurisdictional discovery, (ECF No. 57), is granted as outlined below.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THERFORE ORDERED that Innesbrook Apartments, LLC d/b/a Southpoint Glen's Motion to Dismiss, (ECF No. 38), and GREP Southeast, LLC's Motion to Dismiss, (ECF No. 49), are DENIED.

IT IS FURTHER ORDERED that Greystar Defendants' Motion to Dismiss, (ECF No. 40), is DENIED IN PART, and STAYED IN PART. The motion is DENIED as it pertains to Greystar Real Estate Partners, LLC's motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6). The motion is STAYED as it pertains to Greystar Management Services, L.P.; Greystar RS National, Inc.; and Greystar RS SE, LLC's motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6) pending completion of limited jurisdictional discovery which shall be allowed specifically as set forth herein.

IT IS FURTHER ORDERED that Plaintiff's Motion for Jurisdictional Discovery, (ECF No. 57), is GRANTED as to Defendants Greystar Management Services, L.P.; Greystar RS National, Inc.; and Greystar RS SE, LLC, for the sole purpose of addressing whether this Court has personal jurisdiction over the three entities. The parties shall conduct limited jurisdictional discovery for a period of not more than 90 DAYS from the entry of this Order and shall proceed as directed by the assigned Magistrate Judge. Plaintiff shall be entitled to the following discovery, unless otherwise ordered by the Magistrate Judge:

      1. To submit TWENTY-FIVE (25) interrogatories and requests for production to the designated Greystar Defendants;

2. To obtain the deposition of corporate designees for Greystar Management Services, L.P.; Greystar RS National, Inc.; and Greystar RS SE, LLC who are knowledgeable on the subjects at issue in Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).

3. To obtain the deposition of Mary Bunt, a Senior Director of Technology Services for the designated Greystar Defendants.

IT IS FURTHER ORDERED that upon completion of the limited jurisdictional discovery ordered herein, the parties shall each submit a supplemental brief on the sole issue as outlined in this Order. The supplemental briefs shall be no more than 15 pages each and shall be filed within 21 days of completion of the discovery ordered herein. The supplemental briefs need not restate the facts of the case.

IT IS FURTHER ORDERED that all remaining issues are stayed pending resolution by this Court as to whether it has personal jurisdiction over the specific Defendants named herein.

This, the 11th day of September 2019.


/s/ Loretta C. Biggs
United States District Judge