IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KATRINA WALLACE, on behalf of herself and other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:18CV501 |
| GREYSTAR REAL ETATE PARTNERS, LLC, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion for Judgment on the Pleadings pursuant to Rule 12(c) filed by Defendants, (ECF No. 161). Plaintiff alleges that her landlords charged her "Eviction Fees" in February 2018 in violation of North Carolina's Residential Rental Agreements Act, N.C. Gen. Stat. § 42-46, and other laws. (ECF No. 32.) Defendants argue that Section 42-46, as amended in June 2021, explicitly allows the charged fees and thus Plaintiff has failed to state a claim. (ECF No. 162 at 4 (citing 2021 N.C. Sess. Laws 71 §§ 1.1–1.2).) For the reasons stated herein, Defendants' motion will be granted in part and denied in part.

1

**I.  BACKGROUND**[1]

Plaintiff leased an apartment from Defendants from April 23, 2017, until June 21, 2018. (ECF No. 32 ¶ 55.)  After Plaintiff missed her February 2018 rental payment, Defendants charged Plaintiff a late fee and a $201 eviction "filing fee" (hereinafter "Eviction Fees") and filed for summary ejectment in state court. (*Id.* ¶¶ 63–64, 72, 79; ECF Nos. 32-5 at 3; 32-8; 32-10 at 2.)  Plaintiff immediately paid the Eviction Fees, late fee, and outstanding rent, and Defendants voluntarily dismissed their ejectment action.  (ECF Nos. 32-5 at 3; 32-10 at 1.)

Plaintiff subsequently filed this action in state court on behalf of herself and those similarly situated, alleging that Defendants' Eviction Fees were unlawful and seeking monetary and declaratory relief.  (*See* ECF No. 1-1.)  Defendants, on June 13, 2018, removed to this Court, (ECF No. 1); and on August 24, 2018, Plaintiff filed an Amended Complaint, (ECF No. 32), which alleges that the threat and collection of Eviction Fees violated the North Carolina Residential Rental Agreements Act ("RRAA"), N.C. Gen. Stat. § 42-46, the North Carolina Debt Collection Act ("DCA"), § 75-50, *et seq.*, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), § 75-1, *et seq.* (*Id.* ¶¶ 98–129.)[2]

On June 14, 2018, one day after Defendants removed this case from state court, the General Assembly amended Section 42-46 (the "2018 Amendment") to expressly permit a landlord to charge a tenant for filing fees, costs of service, and reasonable attorneys' fees "not to exceed fifteen percent (15%) of the amount owed by the tenant. . . ." 2018 N.C. Sess. Laws

---

[1] The alleged facts of this case are set out in detail in the Court's September 11, 2019, Order. *Wallace v. Greystar Real Est. Partners, LLC*, No. 1:18CV501, 2019 WL 4305849, at *1 (M.D.N.C. Sept. 11, 2019).

[2] The Complaint additionally seeks a declaratory judgment that N.C. Gen. Stat. § 42-33 is not applicable to this case. (*Id.* ¶¶ 130–141.)

50 § 1.1(b) (codified at N.C. Gen. Stat. § 42-46(i)–(j)). The 2018 Amendment became law on June 25, 2018. *Id.*

Following the 2018 Amendment, Defendants moved to dismiss Plaintiff's claims, arguing that the 2018 Amendment clarified that the Eviction Fees were permitted in February 2018. (ECF Nos. 38; 39; 40; 41; 49; 50.) This Court disagreed and denied Defendants' motion. *Wallace v. Greystar Real Est. Partners, LLC*, No. 1:18CV501, 2019 WL 4305849, at *9–10 (M.D.N.C. Sept. 11, 2019). First, this Court found that Defendants "failed to show that N.C. Gen. Stat. § 42-46, as it existed in February 2018, would have allowed Defendants to charge the Eviction Fees on February 16, 2018." *Id.* at *9. Second, this Court found that, "[b]ecause the 2018 Amendment altered the rights of landlords in pursuing summary ejectment actions, it should only be applied prospectively" and therefore did not govern Plaintiff's claims. *Id.* at *10.

On June 23, 2021, the General Assembly again amended Section 42-46, and the amendment became law on July 2, 2021, ("2021 Amendment"). 2021 N.C. Sess. Laws 71 §§ 1.1–1.2 (codified at N.C. Gen. Stat. § 42-46). Like the 2018 Amendment, the 2021 Amendment expressly permits a landlord to charge a tenant for filing fees, costs of service, and reasonable attorneys' fees. 2021 N.C. Sess. Laws 71 § 1.1. Unlike the 2018 Amendment, however, the 2021 Amendment provides that it "is intended to apply retroactively to all pending controversies as of that date." § 1.2.

Defendant now moves for judgment on the pleadings, arguing that in light of the 2021 Amendment, Plaintiff has failed to state a claim upon which relief can be granted. (ECF Nos. 161; 162.)

## II. LEGAL STANDARD

A court applies the same standard to a Rule 12(c) motion for judgment on the pleadings as to a Rule 12(b)(6) motion to dismiss. *Occupy Columbia v. Haley*, 738 F.3d 107, 115–16 (4th Cir. 2013). The court assumes the truth of all factual allegations in the complaint, draws all reasonable inferences in favor of the plaintiff, and asks whether the complaint plausibly states a claim for relief. *Id.* In other words, the plaintiff must plead facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable" and demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a Rule 12(c) motion, a court may consider only the pleadings, any exhibits thereto that are essential to the allegations, and matters of public record susceptible to judicial notice. *See Massey v. Ojaniit*, 759 F.3d 343, 347–48 (4th Cir. 2014); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that documents attached to the complaint may be considered "so long as they are integral to the complaint and authentic").

## III. DISCUSSION

Plaintiff counters Defendant's motion by arguing that the 2021 Amendment cannot be retroactively applied to this case consistent with the North Carolina Constitution. (ECF No. 168 at 6.)

North Carolina courts, however, "will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds." *Anderson v. Assimos*, 572 S.E.2d 101, 102 (N.C. 2002). Thus, the Court will first consider whether the 2021 Amendment (1) clarifies, rather than alters, N.C. Gen. Stat. § 42-46, or (2) can be construed to apply only

4

prospectively. After answering both questions in the negative, the Court will turn to (3) the constitutionality of the 2021 Amendment's retroactive application.

## A. The 2021 Amendment alters, rather than clarifies, the original statute

An amendment that "does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment" applies "to all cases pending before the courts when the amendment is adopted, regardless of whether the underlying claim arose before or after the effective date of the amendment." *Ray v. N.C. Dep't of Transp.*, 727 S.E.2d 675, 681 (N.C. 2012). An amendment that "clarifies," rather than "alters," a statute may be retroactively applied without constitutional concern. *Id.* An amendment that alters a statute, on the other hand, may only be retroactively applied if retroactive application is consistent with the North Carolina Constitution. *See Lester Bros. v. Pope Realty & Ins. Co.*, 109 S.E.2d 263, 266 (N.C. 1959).

Determining whether an amendment clarifies or alters a statute "requires a careful comparison of the original and amended statutes." *Ray*, 727 S.E.2d at 682 (quoting *Ferrell v. Dep't of Transp.*, 435 S.E.2d 309, 315 (N.C. 1993)). An amendment is more likely to be clarifying if the original statute "fail[ed] expressly to address a particular point but addresses it after the amendment." *Id.* (internal quotations omitted). On the other hand, an amendment that "'change[s] the substance' of the original law" alters, rather than clarifies, the law. *Id.* at 682–83 (quoting *Childers v. Parker's, Inc.*, 162 S.E.2d 481, 483 (N.C. 1968)).

It is the job of the judiciary to determine whether an amendment is clarifying or altering. *Id.* at 681. "That the legislature saw itself as clarifying the scope of the statute . . . is not irrelevant" to this determination, but neither is it conclusive. *Bryant v. United States*, 768 F.3d

5

1378, 1385 (11th Cir. 2014) (applying North Carolina law). "Even the action of the legislature in amending a statute so as to make it directly applicable to a particular case is not a conclusive admission that [the statute] did not originally cover such a case." *Childers*, 162 S.E.2d at 484 (internal quotations omitted). An amendment that creates a new "substantively distinct exception" to the existing statute "from whole cloth" alters that statute, even when the amendment explicitly provides that the intent of the legislature was to clarify, rather than alter, the statute. *Bryant*, 768 F.3d at 1385.

Here, the 2021 Amendment states that it is "intended to be clarifying of the General Assembly's intent under previous amendments to this statute." 2021 N.C. Sess. Laws 71 § 1.2. This legislative intent weighs in favor of finding that the amendment is merely clarifying and has retroactive effect. However, as this Court determined in its prior Order, the unamended version of N.C. Gen. Stat. § 42-46 was "clear and unambiguous." *Wallace*, 2019 WL 4305849, at *9. The statute explicitly provided that "[i]t is contrary to public policy for a landlord to put in a lease or claim *any fee* for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized." *Id.* at *8 (quoting § 42-46(h)(3)). As this Court reasoned, "'any fee' means 'any fee.'" *Id.* at *9. Thus, by authorizing landlords to collect out-of-pocket expenses and litigation costs in the 2018 and 2021 Amendments, the General Assembly "creat[ed] new rights" for landlords out of whole cloth. *See id.* at *10 (quoting *Childers*, 162 S.E.2d at 483).

Consequently, the Court finds that the 2021 Amendment altered, rather than clarified, N.C. Gen. Stat. § 42-46. The amendment can only be retroactively applied to this case if consistent with the North Carolina Constitution.

6

### B. The 2021 Amendment applies retroactively by the plain language of the statute

Next, Plaintiffs argue that the 2021 Amendment can be interpreted to apply purely prospectively or, alternatively, retroactively "to the 2018 Amendment <u>alone</u>" and not to causes of action which predate the 2018 Amendment. (ECF No. 168 at 22–24.)

"[A] statute is presumed to have prospective effect only and should not be construed to have a retroactive application unless such an intent is clearly expressed or arises by necessary implication from the terms of the legislation." *State v. Green*, 514 S.E.2d 724, 727 (N.C. 1999). "The primary endeavor of courts in construing a statute is to give effect to legislative intent." *State v. Beck*, 614 S.E.2d 274, 276–77 (N.C. 2005). A court ascertains legislative intent by looking "first to the language of the statute itself." *Fowler v. Valencourt*, 435 S.E.2d 530, 532 (N.C. 1993). Courts "will not adjudge an act of the General Assembly unconstitutional unless it is clearly so." *Hobbs v. Cty. of Moore*, 149 S.E.2d 1, 5 (N.C. 1966); *Bolick v. Am. Barmag Corp.*, 293 S.E.2d 415, 420 (N.C. 1982) ("When a statute would have the effect of destroying a vested right if it were applied retroactively, it will be viewed as operating prospectively only."). However, "[i]f the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *Beck*, 614 S.E.2d at 277 (citing *Fowler*, 435 S.E.2d at 532). Where a statute's retroactive application is "clear beyond any reasonable doubt," the reviewing court must apply it retroactively or strike it as unconstitutional. *See Kornegay v. City of Goldsboro*, 105 S.E. 187, 189 (N.C. 1920).

Here, the 2021 Amendment expressly states that "[t]his Part [amending N.C. Gen. Stat. § 42-46] is intended to apply retroactively to *all* pending controversies." 2021 N.C. Sess. Laws 71 § 1.2 (emphasis added). This explicit reference to retroactive application prevents the Court

7

from construing the amendment to apply only prospectively. Further, it is "intended to be clarifying of the General Assembly's intent under previous *amendments* to this statute." *Id.* (emphasis added). Thus, it clearly purports to apply retroactively to cases arising before and after the passage of the 2018 Amendment.

By its plain language, the 2021 Amendment purports to apply retroactively to this case. The Court must give effect to the amendment's plain meaning unless unconstitutional.

### C. The 2021 Amendment is unconstitutional as retroactively applied to Plaintiff's claim arising under N.C. Gen. Stat. § 42-46.

The Court next considers whether the 2021 Amendment can be retroactively applied to this case consistent with the North Carolina Constitution. "A law is presumed constitutional until the contrary is shown and the burden is on the party claiming that the law is unconstitutional to show why it is unconstitutional as applied to him." *Perry v. Perry*, 341 S.E.2d 53, 58 (N.C. Ct. App. 1986) (citing *Hursey v. Town of Gibsonville*, 202 S.E.2d 161 (N.C. 1974)).

"[T]he Legislature cannot pass any declaratory law or act declaring what the law was before its passage, so as to give it any binding weight with the Courts." *Lester Bros.*, 109 S.E.2d at 266 (quoting *Bank of Pinehurst v. Derby*, 12 S.E.2d 260, 264 (N.C. 1940)). "A retrospective statute, affecting or changing vested rights, is founded on unconstitutional principles and consequently void." *Id.* Retrospective statutes implicate Article I, § 18 of the North Carolina Constitution, which provides: "All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18; *see Osborn v. Leach*, 47 S.E. 811, 812 (N.C. 1904). Retroactive laws also implicate Article I, § 19,

8

which provides that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Under either clause, "[t]he proper question for consideration is whether the act as applied will interfere with rights which had vested or liabilities which had accrued at the time it took effect." *Bolick*, 293 S.E.2d at 420.

Generally, a cause of action vests upon injury. "An accrued cause of action is a property interest." *Id.* "Where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process." *Lamb v. Wedgewood S. Corp.*, 302 S.E.2d 868, 881 (N.C. 1983) (quoting *Burmaster v. Gravity Drainage Dist. No. 2 of St. Charles Par.*, 366 So. 2d 1381, 1387 (La. 1978)); *see Rhyne v. K-Mart Corp.*, 594 S.E.2d 1, 12 (N.C. 2004) ("A right to sue for *an injury* is a right of action; it is a thing in action and is property."). Without an injury, a plaintiff has no vested right in the "expectation of a continuance of existing law." *Armstrong v. Armstrong*, 368 S.E.2d 595, 598 (N.C. 1988). To vest, a right "must be something more than a *mere expectation . . . it must have become a title*, legal or equitable, *to the present or future enjoyment of property, a demand, or legal exemption from a demand by another*." *Id.*; *see also Coventry Woods Neighborhood Ass'n v. City of Charlotte*, 688 S.E.2d 538, 545 (N.C. Ct. App. 2010) ("To have a property interest . . . [plaintiff] must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972))). Where a plaintiff has suffered an injury, however, the commission of a wrong vests in the plaintiff a property right to "actual damages," which are "protected by the ordinary constitutional guarantees." *Osborn*, 47 S.E. at 813 ("The right to recover damages for an injury is a species

9

of property, and vests in the injured party immediately on the commission of the wrong."). It is the commission of the wrong, and "not the subsequent verdict and judgment," that vests the right. *Id.* "The verdict and judgment simply define its extent." *Id.*

Citing *Dyer v. Ellington*, 36 S.E. 177 (N.C. 1900), Defendants argue that Plaintiff cannot have a vested interest in a cause of action created by statute. (ECF No. 172 at 3–6.) *Dyer* concerned a public disclosure law that required officials to timely disclose certain documents and created a cause of action against officials who violated the law. *Dyer*, 36 S.E. at 177. Any person could bring suit under the law without showing any particularized injury, and rather than seeking actual damages, plaintiffs could force defendants to pay a "penalty." *Id.* The plaintiff in *Dyer* sued his town commissioners for such a failure under the statute, and the General Assembly subsequently passed a law to grant "amnesty or pardon to the commissioners" without repealing the public disclosure statute. *Id.* The North Carolina Supreme Court determined that plaintiff had no vested right and, therefore, his suit was dismissed:

> An informer has no natural right to the penalty, but only such right as is given to him by the strict letter of the statute. It is not such a right as is intended to be protected by the act, but is one created by the act. He has in a certain sense an inchoate right when he brings his suit,—that is, the bringing of the suit designates him as the man thereafter exclusively entitled to sue for that particular penalty,—but he has no vested right to the penalty until judgment. Until it becomes vested, we think it can be destroyed by the legislature.

*Id.* at 178. The Court reaffirmed *Dyer* five years later in a suit against a register of deeds under the same statute. *Bray v. Williams*, 49 S.E. 887, 887–88 (N.C. 1905).

*Dyer* and *Bray* held that a statutory cause of action *for a penalty* does not vest before judgment is entered. *Dyer*, 36 S.E. at 177–78; *see also Lexington Grocery Co. v. S. Ry. Co.*, 48 S.E.

801, 803 (N.C. 1904) ("So, as before stated, *a penalty* given by statute may be taken away by statute at any time before judgment is recovered. . . . But a vested right of action is property in the same sense in which tangible things are property and is equally protected against arbitrary interference." (emphasis added)); *Norris v. Crocker*, 54 U.S. 429, 436 (1851) ("No judgment can be rendered in any suit *for a penalty* after the repeal of the act by which it was imposed." (emphasis added)).[3] An action for a penalty does not remedy any particularized injury; therefore, such an action cannot vest upon injury. The actions in *Dyer* and *Bray* also could not vest upon the defendants' violations of the statute. Because the statute allowed *anyone* to bring suit, allowing a cause of action to vest before judgment would entitle *everyone* to the statutory penalty. Finally, the North Carolina Supreme Court soon thereafter held that no plaintiff ever has a vested right to punitive damages until judgment is entered even if he alleged a common law cause of action. *Osborn*, 47 S.E. at 813; *see also Rhyne*, 594 S.E.2d at 18. Thus, *Dyer*'s application is limited to cases where a statute creates a remedy without an injury—a right to sue for a penalty where none exists at common law.

Defendants' expansive reading of *Dyer* to govern all retroactive amendments of statutory causes of action is inconsistent with later case law. The North Carolina Supreme Court has twice held that plaintiffs had vested rights in liability created by statutes. When a plaintiff was wrongfully ejected from a train for refusing to pay prices in excess of a price-fixing statute, the General Assembly's retroactive repeal of the statute unconstitutionally

---

[3] The North Carolina Supreme Court in *Bray* relied in part on the Supreme Court's ruling in *Norris v. Crocker*, 54 U.S. 429 (1851), wherein the U.S. Supreme Court upheld the retroactive application of a portion of the Fugitive Slave Act. *Bray*, 49 S.E. at 888. In *Norris*, the Court explicitly limited its holding to suits "for a penalty." *Norris*, 54 U.S. at 436.

interfered with plaintiff's vested right. *Williams v. Atl. Coast Line R. Co.*, 69 S.E. 402, 403–04 (N.C. 1910). Similarly, when a plaintiff sued a corporation's two shareholders personally for the corporation's breach of contract pursuant to a statute that reserved limited liability to corporations with three or more shareholders, the plaintiff had "a vested right in that liability" which could not be taken away by retroactive application of a statute which extended limited liability to corporations with one or two shareholders. *Lester Bros.*, 109 S.E.2d at 266–68. Additionally, the court has held that retroactive amendment of statutory causes of action are unconstitutional if they interfere with a defendant's vested right *from* liability under the statute. *See Smith v. Mercer*, 172 S.E.2d 489, 494 (N.C. 1970) (construing an amendment to the wrongful death statute which allowed greater recovery to apply prospective only in order to avoid constitutional issue); *Bank of Pinehurst v. Derby*, 12 S.E.2d 260, 263 (N.C. 1940) (holding that a statute allowing banks to reclaim and auction their stockholders' stock could not be retroactively amended to allow banks to also receive deficiency judgments). As these cases demonstrate, the General Assembly's power to retroactively amend statutes that create liability is limited by the state Constitution.

Defendants also point to language in *Williams v. Atlantic Coast Line Rail Co.* that describes "a well-recognized and well-established distinction between cases where the cause of action is created by statute and cases where the cause of action rests upon or grows out of the principles of the common law." (ECF No. 172 at 3–4 (quoting *Williams*, 69 S.E. at 403).) Citing *Dyer*, the North Carolina Supreme Court in *Williams* stated that a statute "creating a cause of action where none existed before, . . . as for instance an action instituted to recover a penalty," does not grant any plaintiff a vested right but instead grants him "an inchoate right

12

subject to be defeated by express legislative action." *Williams*, 69 S.E. at 403. This exception to the general rule "is placed upon the ground that it is a right created by statute—a favor conferred by legislative act which may be withdrawn by express provision before judgment recovered." *Id.* In such circumstances, "the Legislature may, by express terms, take away the right of action" any time before judgment is entered. *Id.*

Defendants argue that since "every cause of action in Plaintiff's Amended Complaint was created by statute," Plaintiff cannot have a vested right until judgment is entered. (ECF No. 172 at 4.) Again, Defendants' argument leaves out important context. As mentioned above, *Williams* concerned a suit against a railroad company for wrongful ejectment after plaintiff was ejected from a train for refusing to pay a ticket price in excess of 2.25 cents per mile, the maximum price permitted by state statute. *Id.* at 402. After plaintiff filed suit, the General Assembly repealed the price fixing statute and replaced it with a total bar to liability in any pending or future action for a railroad's violation thereof. *Id.* Nevertheless, the court held that retroactive application of the amendment would be unconstitutional. *Id.* at 403–04. While acknowledging that a statute, rather than common law, made defendant's prices (and subsequent ejectment of plaintiff) wrongful, the court concluded that plaintiff's underlying right—the right not to be unlawfully removed from a train—and defendant's wrong "[b]oth are founded upon well-established principles of the common law." *Id.*

Thus, *Williams'* differentiation between statutory and common law causes of action was used by the court to *distinguish Dyer*, not expand the reach of its holding. *Williams* distinguished between "a right created by statute," such as "an action instituted to recover a penalty," and a right that is governed by a particular statute in a particular case but is "founded upon well-

13

established principles of the common law." *Id.* This echoes of the difference *Dyer* drew between statutes that "protect[ ]" a right from those that "create[ ]" a right. *Dyer*, 36 S.E. at 178. Therefore, although *Williams* reaffirmed that a right purely created by statute cannot vest prior to judgment, it also held that a right governed by or protected by a statute vests upon injury.

Here, Plaintiff brings her first cause of action pursuant to N.C. Gen. Stat. § 42-46. (ECF No. 32 ¶¶ 98–103.) However, that statute does not explicitly create a cause of action. § 42-46. The statute outlaws certain fees but does not create a cause of action to recoup unlawfully collected funds. *Id.* The North Carolina Supreme Court recently considered a similar statute that limited municipal sewer and water fees but "did not provide an explicit statutory right to seek recovery of the challenged" fees and held that a suit alleging violation of the statute, "when viewed realistically," is a cause of action "resting upon an alleged statutory violation that resulted in the exaction of an unlawful payment which plaintiffs had *an inherent right to recoup.*" *See Quality Built Homes Inc. v. Town of Carthage*, 813 S.E.2d 218, 228 (N.C. 2018) (emphasis added).[4] This "inherent right" was not created by statute but was recognized at common law. *See generally Wells v. Foreman*, 72 S.E.2d 765, 767 (N.C. 1952) (holding that a plaintiff may recover funds paid under a contract that was unenforceable due to the statute of frauds); Restatement (Second) of Contracts § 198 cmt. b (Am. L. Inst. 1981)

---

[4] The court's task in *Quality Built Homes* was to determine which statute of limitations governed the plaintiff's cause of action and did not concern a retroactive statute. *Quality Built Homes Inc. v. Town of Carthage*, 813 S.E.2d 218, 227–28 (N.C. 2018). However, this Court finds the court's characterization of the plaintiff's "right to recoup" the "unlawful payment" to be an "inherent right" instructive as to whether the court would find, on the facts of this case, that Plaintiff has a vested right.

14

("A party has a claim in restitution for performance that he has rendered under . . . a promise that is unenforceable on the grounds of public policy if . . . the public policy is intended to protect persons of the class to which he belongs."). Thus, this Court finds that Plaintiff has an "inherent right" to recoup funds unlawfully collected by Defendants. As in *Williams*, this right is "founded upon well-established principles of the common law" and vested upon Plaintiff's injury.

Therefore, the Court finds that Plaintiff has a vested right to pursue her first cause of action for recovery of her Eviction Fees. Retroactive application of the 2021 Amendment to this claim is unconstitutional. Defendant's motion for judgment on the pleadings will be denied as to this claim.

Plaintiff's second and third causes of action, however, require a different outcome. Plaintiff brings her second cause of action pursuant to the North Carolina Debt Collection Act ("DCA"), N.C. Gen. Stat. § 75-56(b). This statute explicitly creates a private cause of action against a debt collector who collects or attempts to collect any debt by "[t]hreatening to take any action not permitted by law." §§ 75-51(8), 56(b). The DCA allows recovery of actual damages and civil penalties. § 56(b). Plaintiff brings her third cause of action pursuant to the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-16. The UDTPA also explicitly creates a cause of action against anyone who injures the business of another in violation of the UDTPA and allows for treble damages. *Id.* These statutes were adopted "because common law remedies had proved often ineffective." *Marshall v. Miller*, 276 S.E.2d 397, 400 (N.C. 1981). Thus, they provide "a remedy for an entirely statutory cause of action. *Id.* at 402. They create rights that are "sui generis . . . neither wholly

tortious nor wholly contractual in nature." *Bernard v. Cent. Carolina Truck Sales, Inc.*, 314 S.E.2d 582, 584 (N.C. Ct. App. 1984). Here, therefore, *Dyer* is on point.[5] Plaintiff's second and third causes of action assert rights that were created by the General Assembly; thus, they can be retroactively revoked prior to the entry of judgment. Plaintiff has failed to meet her burden of showing that retroactive application of the 2021 Amendment to these causes of action would be unconstitutional. Accordingly, Defendants' motion will be granted as to these claims.[6]

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment on the Pleading, (ECF No. 161), is GRANTED in part and DENIED in part. It is GRANTED as

---

[5] This opinion should not be construed as an endorsement of *Dyer*. In the century since *Dyer* was decided, the North Carolina Supreme Court has held in other contexts that the General Assembly's policymaking power is not limited by a cause of action's designation as "statutory" or "common law." *See, e.g.*, *Lamb*, 302 S.E.2d at 882 ("[T]he General Assembly is the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter."); *Rhyne*, 594 S.E.2d at 9 ("[I]t is properly within the power of the legislature to establish statutes of limitations, statutes of repose, create new causes of action, and otherwise modify the common law."). As recently as 2021, the court held that an "injury" under the Open Courts Clause of the North Carolina state constitution, N.C. Const. art. I, § 18, does not distinguish between statutory and common law injuries for purposes of establishing standing. *Committee to Elect Dan Forest v. Employees Political Action Committee*, 853 S.E.2d 698, 731 (N.C. 2021). However, this Court must apply the law as announced by the North Carolina Supreme Court where such an announcement is clear and has not been overruled. *Brendle v. Gen. Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974) (citing *Comm'r of Internal Revenue v. Est. of Bosch*, 387 U.S. 456, 465 (1967)).

[6] The 2021 Amendment does not by its terms amend the DCA or UDTPA; however, because Plaintiff's DCA and UDTPA claims rests solely on the allegation that Defendants collected or attempted to collect fees proscribed by N.C. Gen. Stat. § 42-46, (*see* ECF No. 32 ¶ 118), retroactive application of the 2021 Amendment destroys Plaintiff's second and third causes of action.

16

to Plaintiff's claims arising under the DCA, N.C. Gen. Stat. § 75-56(b), (Count II), and the UDTPA, § 75-16, (Count III). It is DENIED as to all remaining claims.

This, the 24th day of February 2022.

/s/ Loretta C. Biggs
United States District Judge