IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KATRINA WALLACE, on behalf of herself )
and other similarly situated, )
)
Plaintiff, )
)
v. )                    1:18CV501
)
GREYSTAR REAL ETATE PARTNERS, )
LLC, *et al.*, )
)
Defendants. )
)

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

In this purported class action, Plaintiff alleges that her landlords charged her "Eviction

Fees" in February 2018 in violation of North Carolina's Residential Rental Agreements Act,

N.C. Gen. Stat. § 42-46, and other laws. (ECF No. 32.) Before the Court is Plaintiff's Motion

for Class Certification, (ECF No. 164). For the reasons stated herein, Plaintiff's motion will

be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff leased an apartment from "Greystar" from April 23, 2017, until June 21, 2018.

(ECF Nos. 32 ¶¶ 18, 55; 171-1 at 22–23.) After Plaintiff missed her February 2018 rental

payment, (*Id.* ¶¶ 59–61, 63), Defendants filed for summary ejectment in state court, issued

Plaintiff a collection letter, and charged her a $201 eviction "filing fee" "[t]o dismiss the

eviction filing" (hereinafter "Eviction Fees"). (*Id.* ¶¶ 64, ECF Nos. 32-5 at 3, 32-8, 32-10 at

1

2.)  Plaintiff immediately paid the Eviction Fees, late fee, and outstanding rent.  (ECF Nos. 32-5 at 3; 32-10 at 1.)  Defendants then voluntarily dismissed their ejectment action.  (ECF Nos. 32-5 at 3; 32-10 at 1.)

"Greystar" is a brand used by a network of entities that managed 159 properties in North Carolina throughout the relevant time period.  (ECF No. 165-1 at 60.)  If a tenant at a Greystar managed property failed to pay rent, Greystar employees would issue and send a collection letter generated from a template, identical or similar to the one sent to Plaintiff.  (ECF No. 165-1 at 73–74.)  They would then upload the tenant's information into an online portal called Nationwide Eviction, a service used to hire attorneys to file summary ejectment actions and add Eviction Fees to tenant ledgers.  (*Id.* at 76.)  Greystar charged between $181 and $201 for each eviction filing plus $30 for each additional tenant on the lease.  (*See* ECF Nos. 165-7; 165-8.)

Plaintiff filed this suit on behalf of herself and those similarly situated in state court, and Defendants removed to this Court on June 13, 2018.  (ECF Nos. 1; 1-1.)  Plaintiff filed an Amended Complaint ("Complaint") on August 24, 2018, (ECF No. 32), which alleges that the threat and collection of Eviction Fees violated the North Carolina Residential Rental Agreements Act ("RRAA"), N.C. Gen. Stat. § 42-46, the North Carolina Debt Collection Act ("DCA"), § 75-50, *et seq.*, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), § 75-1, *et seq.*  (*Id.* ¶¶ 98–129.)  The "relevant time period" extends from four years prior to the date Plaintiff filed her suit until June 25, 2018.  (ECF Nos. 32 ¶ 89; 165 at 1 n.2.)

2

This Court issued two Orders simultaneously with this Order. In the first, this Court granted in part and denied in part Defendants' motion for judgment on the pleadings and dismissed Plaintiff's claims under the DCA and UDTPA. In the second, this Court granted in part and denied in part Plaintiff's motion for partial summary judgment as to liability only and held that Defendant Greystar Management is liable as a matter of law for violating the RRAA.

Plaintiff now seeks to certify two classes: a "Collection Letter Class," to include "[a]ll natural persons who, during the Relevant Time Period, (a) resided in any of the properties in North Carolina owned and/or managed by Greystar, and (b) were sent a Collection Letter threatening to charge Eviction Fees"; and an "Eviction Fee Class," to include "[a]ll natural persons who, during the Relevant Time Period (a) resided in any of the properties in North Carolina owned and/or managed by Greystar, (b) were charged, and (c) paid Eviction Fees." (ECF No. 164 at 2.)

## II. LEGAL STANDARD

In order to be certified under Rule 23, a class must first comply with the four prerequisites: "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)). Once that baseline is established, the class action "must fall within one of the three categories enumerated in Rule 23(b)." *Id.* (citing Fed. R. Civ. P. 23(b)). Plaintiff seeks class certification in this case under Rule 23(b)(3), (ECF No. 164 at 1), which requires both that "questions of

law or fact common to class members predominate over any questions affecting only individual members" and, second, that "a class action is superior to other available methods" of adjudication, Fed. R. Civ. P. 23(b)(3).

A party seeking class certification under Rule 23 "must affirmatively demonstrate [her] compliance with the Rule—that is, [she] must be prepared to prove" her ability to meet all of the prerequisites the Rule requires. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) ("The party seeking class certification bears the burden of proof."). Yet while the plaintiff bears the burden to demonstrate compliance, a district court also "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing *Wal-Mart*, 564 U.S. at 350–51). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## III. DISCUSSION

### A. The purported Collection Letter Class's claims have been dismissed

Plaintiff's first purported class includes all Greystar residents who were sent a collection letter during the relevant time period which threatened to charge Eviction Fees. (ECF No. 164 at 2.) Plaintiff's "singular theory" of liability for the Collection Letter Class is rooted in

the DCA, which creates a cause of action against any debtor that threatens to take any action not permitted by law. (ECF No. 165 at 18–19 (citing N.C. Gen. Stat. § 75-51(8).) However, this Court dismissed Plaintiff's DCA claims in an Order entered simultaneously with this Order. Since Plaintiff no longer has a cause of action common to the members of the Collection Letter Class, her motion to certify this class will be denied.

## B.  The purported Eviction Fee Class satisfies Rule 23(a) and (b)(3).

By contrast, the Court finds that the Eviction Fee Class satisfies the requirements of numerosity, commonality, typicality, and adequacy, predominance, and superiority.

The first requirement, numerosity, is satisfied when a class is "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). "No specified number is needed" to make this showing, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967), and "a court has broad discretion" in making a determination based on the particular circumstances of the case, *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976). Indeed, some courts have held that classes as small as eighteen may satisfy the numerosity requirement. *See Cypress*, 375 F.2d at 653. Here, Plaintiff alleges that the Eviction Fee Class includes approximately 5,432 members. (ECF No. 165-1 ¶ 10.) Such a class size is well within the range appropriate for class certification, see *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), and the Court concludes that it is sufficiently large enough to meet the numerosity requirement.

Second, Plaintiff must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because "any competently crafted class complaint literally

raises common questions," what matters most to commonality is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *See Wal-Mart*, 564 U.S. at 349–50. "A single common question will suffice" if it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT*, 764 F.3d at 360 (citing *Wal-Mart*, 564 U.S. at 350, 359). That said, "[t]he common questions must be dispositive and over-shadow other issues" in the case, *Lienhart*, 255 F.3d at 146, and a plaintiff must show that he or she suffered the same injury and not merely a violation of a particular provision of law, *Wal-Mart*, 564 U.S. at 349–50 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

Here, the questions of law or fact common to the class include determining which Defendants are responsible for charging Eviction Fees and whether those fees were permitted by North Carolina law. These issues are dispositive, and their resolution is central to the validity of Plaintiff's claims. Defendants do not dispute that these issues are common to the class but contend that their affirmative defense of accord and satisfaction "depends on facts peculiar to each plaintiff" and, therefore, "class certification would be erroneous." (ECF No. 169 at 5.) In essence, Defendants argue that certain class members agreed to pay Eviction Fees in exchange for dismissal of their eviction actions, constituting accords and satisfactions that bar their suits. (*Id.* at 7.) They argue that litigation of this defense requires "asking every member of the class whether they thought they were settling their claim with Greystar in exchange for being able to remain in their apartment." (*Id.* at 6.) Defendants misstate the law, however. Whether a payment constitutes an accord and satisfaction depends not on the

subjective intent of the Class members, but on objective criteria, such as "the language of the contract, the purposes of the contract, the subject matter and the situation of the parties at the time the contract is executed." *Bolton Corp. v. T.A. Loving Co.*, 347 S.E.2d 369, 372 (N.C. 1986); *see In re Five Oaks Recreational Ass'n, Inc.*, 724 S.E.2d 98, 102 (N.C. Ct. App. 2012). Defendants do not explain why this objective inquiry cannot be undertaken class-wide where Defendants followed the same eviction procedure with each Class member and Defendants have submitted no evidence that they negotiated payment of the Eviction Fees with any tenant. *See Five Oaks*, 724 S.E.2d at 102 (holding that an accord and satisfaction requires evidence or allegation of "communication between plaintiff and defendant concerning a dispute over the account" or "negotiation or agreement between plaintiff and defendant concerning payment or acceptance of less than the full amount of the account"). Moreover, it remains disputed whether Eviction Fees charged in violation of public policy can be the basis of an accord and satisfaction at all, (*See* ECF No. 173 at 2–5), a question of law common to the Class. Thus, Plaintiff has demonstrated commonality of factual and legal issues.

Third, Plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require "that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned," so long as the variation in claims does not "strike[ ] at the heart of the respective causes of actions." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). Here, Plaintiff has submitted evidence that Defendants employed the same collection practices with all Class members. The collection letter she received and the amount she was charged are

typical of the Class, and her cause of action is identical to the cause of action alleged on behalf of the Class. Thus, Plaintiff has established typicality.

Fourth, Plaintiff must show that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiff must (1) be represented by adequate counsel, *see Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993), and (2) not have interests antagonistic to the class, *see Barnett v. W.T. Grant Co.*, 518 F.2d 543, 546 (4th Cir. 1975). Here, it appears that Plaintiff's counsel are experienced litigators with extensive prior exposure to class action suits. (*See* ECF No. 165-1 at 8–21.) Further, Defendants have not identified any antagonistic interests held by Plaintiff, and none are apparent from the record. Plaintiff's interest in this litigation is the same as the Class members' interest: to recoup her Eviction Fees. Thus, the Court finds that Plaintiff has satisfied the adequacy requirement.

Fifth, Plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Court must consider "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). As discussed above, common issues include liability of the Defendants, legality of the Eviction Fees, and viability of Defendants' defenses. Since Defendants employed the same or similar collection procedure with each Class member, it appears that "the same evidence will suffice" for each Class member to demonstrate liability.

8

*See id.* The only non-common issue apparent from the record is the calculation of damages, which can be readily accomplished without much individual litigation. Thus, the Court finds that common questions of law or fact predominate over individual questions.

Sixth, Plaintiff must show that "a class action is superior to other available methods" of adjudication. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four factors to be considered:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Here, these factors weigh in favor of class certification. First, there is no evidence that any class members have any specific interest in controlling the litigation. Second, the parties have already engaged in considerable litigation, including motions to dismiss, for judgment on the pleadings, and for summary judgment. Third, concentration of claims aids judicial efficiency by allowing the court to dispense with thousands of claims simultaneously. Fourth, no particular difficulties in managing the class action are apparent from the record.

Defendants argue that statutory and treble damages available under Counts II and III of Plaintiff's Complaint weigh against class certification because they (1) provide ample incentives for bringing individual actions and (2) will be distorted under the DCA "to the point of ruination." (ECF No. 169 at 11.) The Court, however, dismissed Counts II and III in an Order issued simultaneously with this Order, rendering this argument moot.

In conclusion, the Court finds that Plaintiff has met her burden under Rule 23(a) and (b)(3). The Court will certify the Eviction Fee Class.

For the reasons stated herein, the Court enters the following:

**ORDER**

    **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Class Certification, (ECF No. 164), is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** as to the Eviction Class.  It is **DENIED** as to the Collection Letter Class.

    This, the 24th day of February 2022.

/s/ Loretta C. Biggs       
United States District Judge
